CLARENCE B. KING, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 6474

November 22, 1971                    490 P.2d 1054

*Robert G. Legakes,* Public Defender, and *Morgan D. Harris,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, of Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, Mowbray, J.:

Clarence B. King, the appellant, was tried to a jury and found guilty of involuntary manslaughter. NRS 200.070.[1] He seeks reversal of his judgment of conviction on the sole ground that the evidence presented to the jury was insufficient to support their verdict. A jury verdict will not be overturned if there is sufficient evidence in the record to substantiate the jury's finding. Williams v. State, 87 Nev. 230, 484 P.2d 1088 (1971); Collins v. State, 87 Nev. 436, 488 P.2d 544 (1971); Graham v. State, 86 Nev. 290, 467 P.2d 1016 (1970). The jury is the sole and exclusive judge of the credibility of the witnesses and the weight to be given the evidence. Cross v. State, 85 Nev. 580, 460 P.2d 151 (1969).

We turn to the record. The information that charged King provided in part that King "unlawfully and feloniously kill[ed] ROBERT JOHNSON, a human being, without malice or deliberation in the commission of an unlawful act, to-wit, by operating a 1951 Ford half-ton pickup, . . . in a careless, reckless, and imprudent manner and in such manner as to endanger the life, limb, and property of persons upon said public highway, while under the influence of intoxicating liquor, having failed

---

[1]NRS 200.070:
"Involuntary manslaughter shall consist in the killing of a human being, without any intent so to do, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner; but where such involuntary killing shall happen in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder."

to stop in obedience to a stop sign erected at said intersection and a construction flagman directing traffic at said intersection, . . ."

The 1951 Ford pickup truck driven by King collided at an intersection with a larger, belly-dump truck driven by Wesley Eugene Simons. Robert Johnson, one of King's passengers, died as a result of injuries received in the collision. At King's trial, several witnesses testified for the State. Eugene Brooks, a flagman for Nevada Rock and Sand Company, testified that he had been stationed at the intersection where the collision occurred, for the purpose of controlling traffic to insure its flowing in an orderly fashion. He wore a red vest and directed the traffic with a "Stop"/"Slow" sign. Brooks testified that he had stopped the eastbound traffic to permit the belly-dump truck to pass through the intersection. According to Brooks, King, who was in the lane of eastbound vehicles, did not stop, but pulled around the other vehicles and headed for the intersection. Brooks tried to stop King, but he was unsuccessful, and the collision resulted.

Wesley Eugene Simons, the driver of the belly-dump truck, testified for the State. His testimony for the most part corroborated that of Brooks.

King's version of the accident was considerably different from the one presented by Brooks and Simons. He denied that the eastbound traffic had been halted by Brooks. King claimed that he crept toward the intersection with great caution, at a rate not exceeding 5 miles an hour; that Brooks "waved" him through the intersection, and the collision resulted. He also denied that he had been drinking heavily. He was the only witness appearing in his behalf.

David H. Shepherd, a detective for the Clark County Sheriff's office, testified that after the accident he assisted Wayne Edelman, a laboratory technician at Southern Nevada Memorial Hospital, in taking a blood sample from King. It was determined that King's blood contained .251 grams of alcohol per 100 milliliters of blood, which is .251 percent blood alcohol. Nevada law provides that the presence of 0.15 percent or more by weight of alcohol in the blood is sufficient to establish the presumption that a person is under the influence of intoxicating liquor.[2]

---

[2] NRS 484.055, subsection 1(c), in effect at the time of the accident, February 27, 1969:

"1. In any criminal prosecution for . . . driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of

Other witnesses testified for the State whose testimony we shall not reiterate, because it is not necessary to do so. It is clear that there is substantial evidence in the record to support the jury's verdict of guilty. The judgment of conviction is affirmed.

ZENOFF, C. J., BATJER, THOMPSON, and GUNDERSON, JJ., concur.

the defendant's blood, urine, breath or other bodily substance shall give rise to the following presumptions:

"...

"(c) If there was at that time 0.15 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor." (Repealed effective July 1, 1969, chapter 675, Statutes of Nevada 1969, at 1510; replaced by identical NRS 484.381, subsection 1(c), now in effect.)