HAROLD LEE McGUIRE, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 13498

STEVEN RAY LEVINE, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 14058

March 9, 1984          677 P.2d 1060

[Rehearing denied June 28, 1984]

*David G. Parraguirre,* Public Defender, *Jane G. McKenna* and *Mark Mausert,* Deputy Public Defenders, Washoe County, for Appellants.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Edward B. Horn,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

These are two appeals from judgments of conviction in criminal cases. The appellants in both cases have raised the common question of whether they were deprived of their right to a

fair trial as a result of prosecutorial misconduct. Since the same prosecutor, John Oakes of the Washoe County District Attorney's Office, was involved in both of these cases, we have determined that consolidation of these appeals is warranted.[1]

In the past we have publicized our concern over the serious nature of the problem of prosecutorial misconduct. We have emphasized not only the problems such misconduct causes in terms of depriving an accused of his or her right to a fair trial, but also the additional public expense needlessly occasioned by such misconduct, especially where such misconduct results in the necessity of a retrial. *See* Moser v. State, 91 Nev. 809, 814-15, 544 P.2d 424, 427-28 (1975) (GUNDERSON, C. J., concurring with approval of full court); State v. Cyty, 50 Nev. 256, 256 P. 793 (1927). We have therefore warned and given clear notice to the prosecutors in this state that in appropriate cases not only will misconduct result in the reversal of a conviction, but that it may, in certain extreme cases, result in the imposition by this court of personal sanctions against the prosecutor. *See* Moser v. State, *supra; see also* Talancon v. State, 97 Nev. 12, 621 P.2d 1111 (1981).

Despite our condemnation of prosecutorial misconduct, and despite the above warnings, the problem of prosecutorial misconduct unfortunately still exists in this state as these two appeals graphically illustrate. We have concluded that not only did the misconduct committed by Oakes deprive both appellants of their right to a fair trial, thereby warranting reversal of their convictions and the granting of a new trial for each of them, but that this is an appropriate case for the imposition of personal sanctions against the prosecutor responsible for this gross waste of judicial resources.

The following are summaries of the misconduct committed by Oakes in each case. As space does not permit us to enumerate each and every instance of misconduct committed by Oakes, we will confine these summaries to only the worst of the instances of misconduct.[2]

---

[1] We are also aware of at least one other appeal pending in this court in which the appellant has made allegations of serious prosecutorial misconduct on the part of prosecutor Oakes. Williams v. State, No. 14754. That case, however, has not yet been submitted for our decision.

[2] We note at the outset that some of the instances of misconduct set forth in these appeals were not objected to at trial by defense counsel. Given the patently prejudicial nature of these comments, and the fact that the misconduct in these cases clearly served to deprive the appellants of their right to a fair trial, we have deemed it appropriate in these cases to consider these complaints of error on appeal. *See* Rhodes v. State, 91 Nev. 720, 542 P.2d 196 (1975).

## McGUIRE v. STATE; NO. 13498

Appellant McGuire was charged and convicted of one count of robbery. At McGuire's jury trial, Oakes made several improper remarks with respect to McGuire's three prior felony convictions, two of which were for armed robbery. First, Oakes attempted to elicit information from McGuire concerning the details of the underlying prior convictions, including what sentences were imposed, whether McGuire had spent any time in prison and what he had stolen on one of the prior occasions. These questions directly violated our rulings in Plunkett v. State, 84 Nev. 145, 437 P.2d 92 (1968), and Jacobs v. State, 91 Nev. 155, 532 P.2d 1034 (1975), as well as the express rulings of the trial court which Oakes disregarded, and therefore clearly constituted misconduct.

Next, Oakes made at least two comments to the jury which improperly indicated that the jury could consider the existence of McGuire's prior convictions in determining whether he was guilty of the present offense. These comments not only constituted a highly improper use of character evidence, in direct violation of the law in Nevada, see NRS 48.045(2); Nester v. State of Nevada, 75 Nev. 41, 334 P.2d 524 (1959), but were made in direct violation of the trial court's earlier admonition to Oakes that such remarks would be improper. Such a flagrant violation of the laws of this state, and of the ruling of the trial court, is simply intolerable.

Oakes then made three additional improper attacks on appellant's character, first by indirectly referring to appellant as an "Aryan Warrior"; second, by stating that he thought it was "curious" that a person who had three prior felony convictions would be out "walking the streets"; and third, by making the following comment to the jury during closing argument:

> You have to decide whether or not this man is a man you want to let loose on the street, on a dark street, and walk the streets of Reno. Is this the type of guy who says he is not guilty?

These comments were completely irrelevant to the issues in this case, and could only have impermissibly served to inflame the emotions of the jury, therefore clearly constituting misconduct

on the prosecutor's part.[3] *See* Cosey v. State, 93 Nev. 352, 566 P.2d 83 (1977); Moser v. State, *supra.* Indeed, the state expressly concedes on appeal that the third comment, quoted above, was improper. .

Oakes later commented to the jury that McGuire had "never testified before" in this case, and then questioned the truth of appellant's trial testimony by inquiring "why he would remain silent" until the time of trial. if his alibi was true. These comments were made in direct violation of McGuire's fifth amendment right to remain silent. It is well settled that a prosecutor is forbidden by the dictates of the fifth amendment to comment either on a defendant's post-arrest silence, *see* Doyle v. Ohio, 426 U.S. 610 (1976), or on a defendant's failure to testify at his preliminary hearing. *See* Bernier v. State, 96 Nev. 670, 614 P.2d 1079 (1980). Clearly, Oakes should have known that such comments were highly improper.

## *LEVINE v. STATE; NO. 14058*

Appellant Levine was charged and convicted of one count of sexual assault in violation of NRS 200.366. The record of Levine's jury trial is virtually riddled with instances of blatant and outrageous acts of prosecutorial misconduct.

During the course of trial, Oakes repeatedly made disparaging and uncalled-for remarks pertaining to defense counsel's ability to carry out the required functions of an attorney. For example, during Oakes' direct examination of the victim, Oakes asked her if appellant had an erection at the time of the assault. The witness answered, "I guess he did." Defense counsel then objected and moved to strike the answer, apparently on the ground that the "guess" constituted speculation. In response to defense counsel's seemingly legitimate objection, Oakes then said: "How do you strike an erection?" We can

---

[3]We take note of the fact that the term "Aryan Warrior" refers to a well-known prison gang in Nevada. The state contends on appeal that the Aryan Warrior remark was a "joking" comment which was "trivial" and which "could not have been taken seriously by the jury." It is rather astonishing that a prosecutor would believe that a felony trial, at which a man's freedom and the public's right to a just prosecution are at stake, is the appropriate place for such "joking." Furthermore, it would be pure speculation for us to hold, as the state argues, that the jury would not have seriously considered a remark about membership in a prison gang.

discern no purpose for the statement other than as an attempt to belittle defense counsel in front of the jury. Other examples appear throughout the trial transcript. Disparaging comments have absolutely no place in a courtroom, and clearly constitute misconduct. *See* People v. Podwys, 44 P.2d 377 (Cal.Ct.App. 1935).

During closing argument, Oakes referred to the fact that the costs of medical witnesses who had testified on Levine's behalf at trial had been paid for at county expense by such persons as the jurors themselves. This comment clearly compromised the role of the jurors as impartial fact-finders and was therefore highly improper. *See* People v. American Medical Centers of Mich., 324 N.W.2d 782 (Mich.Ct.App. 1982).

Oakes once again committed misconduct during closing argument when he made the following highly inflammatory remarks pertaining to the consent defense tendered by Levine at trial:

> If you find Levine not guilty . . . you are going to give him a license to rape and the fact will be that a young girl can go to a party, a young girl can turn down his intentions and try to leave. She can be dragged back in the house by her hair, thrown in the apartment . . . and raped, scream for help and that's consent.
>
> So any one of your daughters, if that happens, there's no problem. Now, maybe some of you older people can't identify with a young girl —

Although these comments were objected to by defense counsel, and Oakes was admonished by the trial court that it was improper to argue that the jurors should place themselves in the position of the victim or any member of the victim's family, Oakes nevertheless persisted in making this type of argument by immediately thereafter stating:

> I'll make it simple. If you find him not guilty, don't ever let me hear you complain.

Not only were these comments exceedingly improper in and of themselves, *see* Cosey v. State, *supra;* Kelly v. Stone, 514 F.2d 18 (9th Cir. 1975), but we are once again appalled by Oakes' contemptuous and blatant disregard for the trial court's rulings.

Lastly, with respect to this case, Oakes made the following

two remarks, both of which can be viewed as improper expressions of his personal belief in Levine's guilt, *see* Owens v. State, 96 Nev. 880, 620 P.2d 1236 (1980), and as improper attempts to mislead the jury on the issue of the presumption of innocence:

> The state has made a charge and we're here to prove it, except I will never want to be accused of trying to send an innocent man to jail.
> You don't think I got a rape victim out of the street to march here into court and waste your time, do you?

Once again, we conclude that these remarks were highly improper and that they clearly constituted misconduct.

## CONCLUSION

With respect to both of these cases, the state has argued on appeal that, even assuming the existence of misconduct, no prejudice to the appellants' right to a fair trial resulted. The state cannot seriously contend that the misconduct in these cases should not be considered prejudicial given its extreme and outrageous nature.[4]

We view with grave concern the staggering cost to the taxpayer of financing our criminal justice system. Of equal concern to this court is the trauma to which victims of crime must be resubjected when a new trial is required. We accordingly approach with great sensitivity the prospect of reversing the verdicts of citizens who have been impanelled as jurors to sit in judgment of the guilt or innocence of an accused. It has nevertheless been the solemn responsibility of appellate courts to safeguard the fundamental right of every person accused of criminal behavior to a fair trial, basically free of prejudicial error. This is but a reflection of the high value our nation and state place on an individual life, and the right of each citizen to liberty and the lawful pursuit of happiness. It is the obligation

---

[4]In this same vein, we conclude that the misconduct in both of these appeals was so outrageous, and so patently prejudicial to the appellants' cases, that the occasional cautionary instructions given by the trial court below were insufficient to cure the damage which was wrought by the misconduct. *See* State v. Cyty, *supra*. Similarly, we disagree with the state's contention on appeal that defense counsel invited or provoked Oakes' misconduct at both of these trials, thereby justifying the misconduct and militation against reversal of the appellants' convictions. *See* Pacheco v. State, 82 Nev. 172, 179-80, 414 P.2d 100, 104 (1966). Any improprieties committed by defense counsel in these two cases were few and far between as compared to those committed by Oakes, and they certainly did not justify the extreme level of Oakes' misconduct.

of government to vouchsafe to its citizens a continuing respect for these values. We therefore conclude that it is an intolerable affront to the criminal justice system, the state and its citizens that the type of egregious conduct outlined in part in this opinion be allowed to occur in our courtrooms. The waste and diversion of limited judicial and human resources are but some of the inevitable consequences of such behavior. Another is the danger that youthful prosecutors may, in their zeal to learn, be persuaded that emulation and perpetuation of such conduct may be both effective and acceptable. These and other consequences not discussed herein must be foreclosed or at least minimized.

Accordingly, the judgments of conviction in both cases are reversed and the cases are remanded for new trials on the merits.[5] Additionally, as noted above, the misconduct in both cases was extreme and outrageous. Clearly our previous warnings, both in the 1975 *Moser* opinion and in the more recent 1981 *Talancon* opinion, have been insufficient to deter Oakes from engaging in such highly improper and inappropriate conduct. Oakes is therefore ordered personally to pay the sum of $250 for each of these appeals, for a total sum of $500. This sum shall be paid to the Washoe County Law Library Book Fund within sixty (60) days of the date of the issuance of this opinion.

Reversed and remanded.

[5] In light of our disposition of these cases, we need not address any of the remaining contentions set forth by the appellants.

With respect to the Levine case, however, we note that counsel for Levine recently filed a motion to compel compliance with a plea bargain. Levine contends that after oral argument a plea bargain was entered into, the terms of which provide for a plea of guilty to one charge in exchange for dismissal of other charges. Levine contends that the state now refuses to comply with the agreement. The state has opposed the motion. The state does not contend that specific performance is an inappropriate remedy for enforcement of the alleged plea bargain in this particular case. Instead, the state's only contention is that no agreement was actually reached and that therefore this court should remand the motion to the district court for a factual determination. We agree with the state that we are unable to resolve the factual issue presented by the motion. Therefore, on remand the district court shall conduct proceedings to determine if a plea agreement was reached in this case, and if so, the terms of the agreement. *See* Zugel v. Miller, 99 Nev. 100, 659 P.2d 296 (1983) (motion to dismiss appeal raised factual issue; remand to district court for determination of facts). If the district court determines that an agreement was reached, the agreement shall be enforced according to its terms. If no agreement was reached, Levine shall be retried pursuant to our reversal of his conviction.