GARY LEE DOWNEY, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 17163

January 21, 1987                              731 P.2d 350

 

*Earl & Earl,* Las Vegas for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney, *Dan Seaton,* Deputy District Attorney, *James Tufteland,* Deputy District Attorney, and *Bradford Jerbic,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Downey was convicted by a jury of murder, robbery and kidnapping. Because the district court admitted prejudicial hearsay evidence, his conviction must be reversed.

### FACTS

On September 27, 1984, Jack Robedeau's body was found by his neighbor, David Moensch. Robedeau was nude, with a towel over his body. The cause of death was asphyxia produced by a combination of strangulation (probably accomplished by a person standing behind the victim, choking him with an arm) and gagging caused by a sock pushed into his mouth. He was probably killed in the early afternoon of September 27.

Moensch described the events of the day of Robedeau's death. Moensch and Robedeau were old friends, both homosexuals, who had once been lovers. Moensch had dropped into Robedeau's apartment earlier in the day, around noon. Appellant Downey was present, and the three men sat and conversed.

After Downey left, Moensch said Robedeau related how he met Downey. Robedeau stated he met Downey a year before when he saw him jogging and picked him up and gave him a ride. He took Downey to his apartment and engaged in homosexual sex. Robedeau told Moensch he was surprised to see Downey again on September 27. Robedeau also stated he had had sex again with Downey that day. Moensch also testified that Robedeau had a healthy sexual appetite and often picked up his sexual partners hitchhiking, in gay bookstores, and at bars.

Moensch stated he left Robedeau's apartment about one o'clock. He went home and told his roommate, Pasquale Vargas, about what Robedeau had told him. Vargas tried to call Robedeau around two o'clock, but got no answer. Vargas picked Moensch up from work at eleven p.m., and they drove by Robedeau's apartment to check on him. Robedeau worked nights and should have been at work when Moensch and Vargas checked on him. As Moensch and Vargas drove by the apartment, they saw Robedeau's car in its place, and lights on in the apartment. They tried to call Robedeau, but got no answer, so they went to the apartment. When they entered, they discovered the body.

Downey testified in his own behalf. His story of his relationship with the victim differed markedly from Moensch's testimony. He stated he met the victim at the check-out stand in a drugstore. They talked, and then left the store. Downey heard the victim yell at someone in the parking lot and went to his assistance. Robedeau then gave Downey a ride home. On the way, they stopped by Robedeau's apartment, but did not go in. Downey next saw Robedeau in August 1984. Robedeau was dressed in a suit and had a flat tire on his car. Downey changed the flat tire, and in the process broke the crystal on his watch. Robedeau offered to have the watch fixed.

Downey next saw Robedeau on September 27. He had been to an arcade near Robedeau's apartment, looking for a job, and decided to jog over to visit Robedeau. He had gone to see Robedeau to find out if his watch had been fixed. He explained to Robedeau that he was going to hitchhike to Texas to see his fiancee and needed the watch. Robedeau had not had the watch repaired, but loaned Downey one of his own. Robedeau inquired about whether he had enough money and gave Downey his telephone credit card number to use to pay for telephone calls to his fiancee. Moensch arrived at Robedeau's apartment and the three men conversed. Downey telephoned the arcade, and then

his friend Danny Gandulla who agreed to meet him at a nearby park. Downey denied any homosexual contact with Robedeau, or anyone else.

Danny Gandulla testified and corroborated Downey's alibi. He stated he spent the afternoon of September 27 with Downey, working out in a park. After the workout, he and Downey went out for lunch. This meeting lasted until about 4 p.m. on September 27.

## DISCUSSION

Downey contends the district court improperly admitted hearsay evidence, the testimony of David Moensch regarding the victim's account of his relationship with Downey. It is clear this testimony is hearsay and there is no exception to the hearsay rule which would permit its admission into evidence. The admission of this evidence violated Downey's rights under the confrontation clause because the victim was not available for cross-examination. *See* California v. Green, 399 U.S. 149 (1970); *see also* Corbin v. State, 97 Nev. 245, 627 P.2d 862 (1981).

The admission of this hearsay evidence is similar to Summers v. State, 102 Nev. 195, 718 P.2d 676 (1986). In *Summers,* the district court admitted a co-defendant's suicide note which implicated the defendant in the murder into evidence over defense objection. The district court believed the note was admissible as a prior inconsistent statement. We found that it was not, and it thus was inadmissible hearsay. *Id.* at 201. We found this to be reversible error because the evidence of guilt was circumstantial and not overwhelming. *Id.* at 202. Further, the prejudicial effect of the dramatic statements in the suicide note was significant. *Id.*

Here, too, the evidence of guilt is not overwhelming and guilt is based solely on circumstantial evidence. The hearsay in this case is extremely prejudicial, both because of its content and because it is, in effect, testimony from the dead victim. The State argues that the failure of defense counsel to object to this evidence precludes our review of this issue. *See* Pasgove v. State, 98 Nev. 434, 435, 651 P.2d 100, 101 (1982). However, we have made exceptions to this rule where the errors are patently prejudicial and require the court to intervene *sua sponte* to protect the defendant's right to a fair trial. *See* Sipsas v. State, 102 Nev. 119, 125, 716 P.2d 231, 235 (1986); *see also* Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962); Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985). Although failure of the defense to object normally would bar appellate review of this issue, we hold the erroneous admission of this evidence has compromised Downey's right to a fair trial. *See* Sipsas v. State, *supra,* 102 Nev. at 125.

Because the improper admission of the hearsay evidence requires that Downey be given a new trial, we need not address his remaining contentions. However, for the guidance of the bench and bar, we will comment briefly on two issues.

Downey claims the prosecutor committed misconduct in closing argument by hinting there was evidence he was not allowed to present to the jury. We note these comments were made in response to an unwarranted attack by defense counsel on one of the prosecution's witnesses. "[C]ounsel on both sides of the table share a duty to confine arguments to the jury within proper bounds." United States v. Young, 470 U.S. 1, 8 (1985). While we commend zeal in vigorous argument, we do not condone unprofessional conduct by either the defense or the prosecution.

Downey also argues that the district court improperly set a deadline for the jury at penalty. As noted, we need not decide this issue, but caution the trial courts of this state to avoid any statements that could be interpreted as setting a deadline for a jury during deliberations. We have long held that a criminal defendant has a right to have a jury verdict free from any type of coercion. See State v. Clark, 38 Nev. 304, 149 P. 185 (1915) (impermissible inquiry as to how jury divided). Courts have found reversible error in giving a jury a deadline for completing deliberations. Burroughs v. United States, 365 F.2d 431 (10th Cir. 1966); Goff v. United States, 446 F.2d 623 (10th Cir. 1971); see also United States v. Lansdown, 460 F.2d 164, 169, n. 3 (4th Cir. 1972).

In sum, our review of the record in this case makes it apparent that Downey was denied his right to a fair trial because of the erroneous admission of the hearsay evidence. Accordingly, the judgment is reversed, the sentence vacated, and the cause remanded for a new trial.