## DAVID MICHAEL PELLEGRINI, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 18581

November 22, 1988                                    764 P.2d 484

*Morgan D. Harris,* Public Defender, *Robert B. Amundson,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, *Daniel Seaton,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

David Michael Pellegrini appeals from jury convictions of burglary, attempted robbery with use of a deadly weapon, and first degree murder with use of a deadly weapon. He also appeals from the jury's imposition of the death penalty for his crimes. The record provides substantial support for the verdict and the penalty; furthermore, we are satisfied that appellant received a fair trial. We therefore affirm the convictions and the penalty imposed.

Pellegrini entered a 7-Eleven store in Las Vegas at approximately 8:00 p.m. on the night of October 25, 1986. He was

nineteen years old. He took a twelve-pack of beer from the refrigerator case and walked to the cashier's counter. The cashier, Barry Hancock, rang up the sale; Pellegrini then claimed to be an undercover officer and told Hancock he was under arrest for selling beer to a minor.

Pellegrini directed Hancock to lock the front door and call the store manager to inform her of what had happened. Hancock complied, and during the telephone conversation, Pellegrini asked the manager to come down to the store. After the call was completed, Pellegrini handcuffed the cashier, led him into a back room, and told him to sit on a stool. The appellant emerged from the back room, then wandered briefly in the vicinity of the cash register. He reentered the room where Hancock sat, handcuffed and helpless. Moments later, Pellegrini shot Hancock through the head. The bullet entered his body through his forehead and traveled down into the back of his neck. The medical examiner estimated that the gun was discharged at a distance of less than two inches from Hancock's head.

Several witnesses observed appellant's actions in the store area, followed him as he left, and supplied the police with his description and license plate number. A video camera in the store recorded the events, including the sound of the gunshot in the back room. Another witness saw Pellegrini in the 7-Eleven parking lot a short time after the murder occurred. Several witnesses recognized his face in a photographic lineup; the police subsequently discovered his location, and he was arrested in his home at approximately 4:00 a.m. on October 26, 1986.

At trial, appellant conceded in his opening statement that he had shot the victim. He took the stand and testified that he had stumbled and fired the gun accidentally. The jury chose not to believe him and convicted him of burglary and attempted robbery and first degree murder with use of a deadly weapon. After the penalty hearing the jury sentenced Pellegrini to death. Pellegrini now appeals, citing several instances of alleged error by the district court. The arguments lack merit; we find no error which is so prejudicial as to require reversal.

## THE ISSUES

1. *The search of appellant's apartment.* Appellant claims that certain evidence[1] was obtained as the result of an unlawful search made of his apartment at the time of his arrest. The arresting officers held a valid warrant for Pellegrini's arrest when they arrived at the apartment complex where he was believed to be

---

[1]The following items were recovered from appellant's apartment: pants, shoes and handcuffs with blood spatters, a jacket, and the murder weapon, a .357 Magnum revolver, with bullets.

residing. The address on the warrant was incorrect, however, because Pellegrini had moved to another apartment in the same complex thirty days before. The apartment manager informed the officers of this change in address, and the district attorney accompanying them telephoned the issuing judge to seek authorization to modify the warrant. The judge granted permission to do so, but no one recorded the conversation. Appellant claims the failure to record rendered the warrant invalid and that the district court erred in refusing to suppress the evidence thus obtained. We disagree.

We have held that a technical defect in a warrant does not necessarily require the suppression of evidence gathered during the ensuing search. Sanchez v. State, 103 Nev. 166, 734 P.2d 726 (1987); Lucas v. State, 96 Nev. 428, 610 P.2d 727 (1980). We are satisfied that the failure to record the telephone conversation at issue is such a technical defect. The suspect was identified through a photographic lineup by a number of eyewitnesses; in addition, several of these witnesses had observed the license plate number of the suspect's vehicle. When the officers arrived at the suspect's last known address, the apartment manager informed them of his recent move to another apartment in the same complex, perhaps fifty yards from his former residence. The manager was a reliable source of such information. The officers then requested a modification of the warrant from the judge who issued it.

The warrant focused upon a well-identified suspect and was supported by sufficient probable cause. The officers obtained judicial authorization of a change in the warrant to allow the search of a particularly identified residence, that of the appellant. Under these circumstances, "there was no reasonable possibility that another premises might be searched." *Lucas, supra,* 96 Nev. at 432, 610 P.2d at 730. Furthermore, the circumstances of the modification and the substance of the conversation were established by sworn testimony. We conclude that the district court did not err in refusing to suppress the evidence found in appellant's apartment at the time of his arrest.

2. *Prosecutorial misconduct.* Appellant cites several remarks made by the district attorney which he asserts are sufficiently prejudicial to require reversal. Our review of the record does not support this contention; we therefore decline to reverse either the convictions or the penalty.

This court will not reverse a verdict on the basis of prosecutorial misconduct where the defendant fails to object, there is overwhelming evidence of guilt, and the offensive remarks did

not contribute to the verdict. Yates v. State, 103 Nev. 200, 734 P.2d 1252 (1987); Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986); Woods v. State, 94 Nev. 435, 581 P.2d 444 (1978). We note that appellant failed to object to many of the remarks now cited as misconduct. Furthermore, there is overwhelming evidence of appellant's guilt, including the eyewitnesses and the videotape. Appellant conceded that he shot the victim in his opening argument to the jury. Thus, it is doubtful that any remarks made by the prosecutor contributed significantly to the guilty verdict.

During the penalty phase, the prosecutor argued that imposition of the death penalty would deter teenagers from committing similar murders. This is not prosecutorial misconduct. Retribution and deterrence are widely accepted as the underlying rationale for the enactment of a death penalty. *See* Gregg v. Georgia, 428 U.S. 153 (1976); State v. Compton, 726 P.2d 837 (N.M.), *cert. denied,* 107 S.Ct. 291 (1986); Davis v. Kemp, 829 F.2d 1522 (11th Cir. 1987), *cert. denied,* 108 S.Ct. 1099 (1988). The introduction of this rationale into prosecutorial argument is similarly acceptable. *See State v. Compton, supra,* 726 P.2d at 844.

The prosecutor also alluded to the possibility that appellant might kill again if allowed to live. A similar argument was criticized by this court in Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985). Of course, the misconduct in *Collier* was much more prejudicial, because the prosecutor compared the defendant to a notorious criminal who had killed again after his imprisonment. The remarks cited by appellant are speculative and refer only to the possibility that Pellegrini might kill again if let out of prison. Certainly, we do not see in this case the multiplicity and outrageousness of prosecutorial misconduct which required a reversal in *Collier.*

Finally, we note the district court cautioned the jury that the arguments were not evidence, and should be evaluated accordingly. We find no misconduct sufficient to justify a reversal.

3. *Search of appellant's vehicle.* Fire investigators searched appellant's vehicle nearly one year before the shooting and seized .22 caliber casings and several weapons. The vehicle was located in a body shop at the time of the search. The evidence was introduced during the penalty phase of appellant's trial to show that he had deliberately destroyed the windows of a former place of employment by shooting at them. Appellant contends the district court erred by allowing the introduction of this evidence.

Even assuming the unlawfulness of the fire investigators'

search,[2] the evidence is not inadmissible. The admissibility of evidence obtained in a similar search was addressed in Cavanaugh v. State, 102 Nev. 478, 729 P.2d 481 (1986), and we concluded that:

> The exclusionary rule exists to deter misconduct; we have already held that where (1) the allegedly improper search involved a completely different crime, (2) the officers involved had no idea that the knowledge they gained would become useful in the prosecution of another offense, and (3) the violation of rights was unintentional, there is nothing to deter and the exclusionary rule does not apply.

*Id.* at 485, 729 P.2d at 486. *See also* Taylor v. State, 92 Nev. 158, 547 P.2d 674 (1976). The rationale of *Taylor* and *Cavanaugh* is equally applicable to this case. The investigation concerned a completely different crime, committed nearly one year before Pellegrini's penalty hearing. The fire investigators had no idea that the information they gained would become useful in a murder trial. Furthermore, the investigators telephoned the district attorney's office before making the search, and were misadvised that it could be conducted pursuant to the forfeiture statute.[3] Thus, any violation of appellant's rights was unintentional on their part.

In addition, death penalty hearings are controlled by a specific statute which allows for the introduction of evidence which is otherwise inadmissible, including evidence of character and specific instances of conduct.[4] A defendant's character and record are relevant to the jury's determination of the appropriate sentence for a capital crime. Jones v. State, 101 Nev. 573, 707 P.2d 1128 (1985).

---

[2]The investigators had recovered four casings and two pieces of lead from the area where the windows had been destroyed. Pellegrini had recently been fired from the store for theft, and was a suspect in the vandalism. As the investigators approached his vehicle, they observed similar casings on the floorboards. In fact, these casings were later matched to the casings found at the scene of the crime. The search may therefore have been justified under the "plain view" theory. *See* Wright v. State, 88 Nev. 460, 499 P.2d 1216 (1972). In the absence of exigent circumstances, however, a warrant should be obtained prior to the search. *Id.* at 465, 499 P.2d at 1219. The vehicle was located in a body shop at the time it was found, indicating there may have been sufficient time to obtain a warrant.

[3]*See* NRS 179.121. The prosecutor conceded this advice was erroneous at the penalty hearing.

[4]NRS 175.552 provides:

> Upon a finding that a defendant is guilty of murder of the first degree, the court shall conduct a separate penalty hearing to determine whether the defendant shall be sentenced to death or to life imprisonment with

The decision to admit particular evidence during the penalty phase is within the sound discretion of the trial court, and will not be overturned absent an abuse of that discretion. Milligan v. State, 101 Nev. 627, 708 P.2d 289 (1985), *cert. denied,* 107 S.Ct. 238 (1986). The evidence must be relevant and must be more probative than prejudicial. NRS 48.035; Crump v. State, 102 Nev. 158, 716 P.2d 1387 (1986). In this case, we are not persuaded that the evidence obtained in the investigators' search was overly prejudicial. It simply informed the jury that the appellant had once committed violence against property and carried weapons in his car. No one was injured in the prior shooting, so there was no danger that the appellant would be convicted for another, unproven crime. The district court did not abuse its discretion in admitting the evidence during the penalty phase of the trial.

## *DEATH PENALTY REVIEW*

We are required by statute to review the imposition of a death penalty sentence. NRS 177.055(2).[5] In this case, however, we conclude that none of the enumerated factors apply. The errors asserted on appeal have been discussed; other arguments made by the appellant have been considered but, in our view, lack merit. The jury found two aggravating circumstances in that the murder was committed during the course of both a burglary and an attempted robbery.[6] These aggravating circumstances are supported by the record. The jury concluded there were no mitigating circumstances.

---

or without possibility of parole. . . . In the hearing, evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible. . . .

[5]NRS 177.055(2) provides:

2. Whether or not the defendant or his counsel affirmatively waives the appeal, the sentence must be reviewed on the record by the supreme court, which shall consider, in a single proceeding if an appeal is taken:

(a) Any errors enumerated by way of appeal;

(b) Whether the evidence supports the finding of an aggravating circumstance or circumstances;

(c) Whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and

(d) Whether the sentence of death is excessive, considering both the crime and the defendant.

[6]The appellant punched two keys on the cash register in an apparent attempt to open it. Pellegrini knew the store manager had the key to the safe, because he had worked in a 7-Eleven store. An eyewitness observed Pellegrini return to the store after he had left the scene, followed by other

We find no evidence that the sentence was imposed under the influence of passion, prejudice or any arbitrary factor. Finally, we do not regard the sentence as excessive. While it is true that appellant was relatively youthful when he committed the murder, and had no prior record, the killing was cold-blooded, deliberate, and completely unprovoked. *See* McKague v. State, 101 Nev. 327, 705 P.2d 127 (1985). We therefore decline to disturb the considered judgment of the jury.

The judgment of conviction and death sentence are hereby affirmed.[7]

witnesses. The jury could reasonably find that Pellegrini had requested the store manager's presence in order to open the safe. This supports the attempted robbery conviction.

[7]The Honorable E. M. Gunderson, Chief Justice, did not participate in the decision of this appeal.