SAMUEL HOWARD, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 20368

November 7, 1990                                    800 P.2d 175

714

[Rehearing denied February 7, 1991]

*Schieck & Derke,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney and *Daniel M. Seaton,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, ROSE, J.:

Appellant Samuel Howard (Howard) was convicted of two counts of robbery with the use of a deadly weapon and one count of murder. The jury sentenced Howard to death. Howard filed a post-conviction petition in district court claiming ineffective assistance of counsel. The district court dismissed Howard's petition. We affirm the district court's dismissal.

## *Facts*

On March 26, 1980, a security guard detained Howard for attempting to defraud Sears Roebuck. Howard pulled out a .357 magnum, took the guard's badge and portable radio, and escaped.

Howard then telephoned a Mrs. Monahan and told her he wanted to buy a van which she and her husband (Dr. Monahan) had advertised for sale. Later that day Howard met the couple at a casino parking lot. Howard claimed to be a security guard who was interested in buying the Monahans' van. He agreed to meet with Dr. Monahan at his office the next morning.

Dr. Monahan was found robbed and murdered in his van on March 27, 1980. The Clark County Grand Jury indicted Howard for the murder of Dr. Monahan in May of 1981. Howard pled not guilty, but did not plead not guilty by reason of insanity.

In April of 1983, a two-week jury trial was held to determine Howard's guilt or innocence. At its conclusion, the jury found Howard guilty of two counts of robbery with the use of a deadly weapon and one count of murder with the use of a deadly weapon.

Howard testified at the penalty hearing regarding his commitments to mental hospitals, his Vietnam War record, and the fact that he had completed two years of junior college. He also claimed that he had a good prison record. Howard, however, denied during cross-examination that he was mentally ill. He also stated "I know what I am doing at all times" in response to a question by the prosecutor. Howard was the only witness called by the defense during the penalty phase of the trial. Howard's attorneys attempted to present mitigating evidence to the jury during the penalty phase of the trial. This evidence included: (1) Howard's history of commitments to mental institutions; (2) Howard's Vietnam War record which included an honorable discharge and a Purple Heart; and (3) Howard's prison records. Howard's attorneys testified that they could not get these records because Howard refused to sign releases for them. Howard contends that he readily agreed to sign any release but his attorneys refused to get any records for him.

During his closing argument the prosecutor, Dan Seaton, told the jury that he believed that Howard should be put to death and that if Howard was not put to death he could escape from jail. He also asked the jury to side with the future victims of Howard rather than with Howard. The prosecutor further stated that he believed that, if released, Howard could kill again, mentioned Charles Manson, and asked the jury to help society by sentencing Howard to death. Howard's attorneys failed to object to the prosecutor's remarks.

At the conclusion of the penalty phase and deliberations, the jury sentenced Howard to death on May 2, 1983.

Attorney Lizzie Hatcher (Hatcher) was appointed by the court to proceed with Howard's appeal to this court. Hatcher argued that Howard's trial counsel was ineffective because the public defender, who was a friend of the victim, was his supervisor. Hatcher, however, did not raise any other specific instances of ineffective assistance of counsel. Hatcher also did not raise on appeal the issue of prosecutorial misconduct. She testified that "we've always been taught that if there has been no objection at the time of trial, that issue is waived."

This court affirmed Howard's conviction and his death sentence on December 18, 1986. *See* Howard v. State, 102 Nev. 572, 729 P.2d 1341 (1986).

Howard filed a petition for post-conviction relief in October of 1987. An evidentiary hearing was held on August 25, 1988. Howard argued that his trial attorneys were ineffective because they failed to present evidence that he was legally insane at the time he killed Dr. Monahan. He further asserted that his attorneys should have called jail personnel, fellow inmates, and psychiatrists to testify that if he was given life imprisonment he would not be a threat to fellow inmates. He insisted that his attorneys were ineffective because they failed to object to the prosecutor's improper remarks made during the penalty hearing. Finally, Howard contended that his appellate counsel had failed to argue on appeal that the prosecutor's remarks were improper.

The district court found that Howard's attorneys acted effectively and that Howard's penalty hearing was more than fair. Therefore, the court denied Howard's petition for post-conviction relief. Howard now appeals that decision.

## Legal Discussion

### I.  *Prosecutorial Misconduct.*

Howard contends that he was denied effective assistance of counsel because his trial attorneys failed to object to improper

comments made by the prosecutor in closing argument during the penalty phase of the trial. Howard further asserts that his appellate attorney was ineffective because she failed to argue on appeal that the prosecutor made improper comments.

The first issue presented is whether certain of the prosecutor's comments made during closing argument constituted prosecutorial misconduct. We conclude that, pursuant to Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985), the prosecutor made three improper arguments to the jury. First, Mr. Seaton stated to the jury that he believed Howard should be put to death:

> Mr. Harmon and I—well, before that even other prosecutors in our office had to okay this case for prosecution. Mr. Harmon and I then come in and we have to do what we have done over the past several weeks. We have to tell you that we believe in what we're telling you, that Sam Howard should be put to death, and we do believe that. We have a responsibility.

In *Collier,* this court stated:

> Such an injection of personal beliefs into the argument detracts from the "unprejudiced, impartial, and nonpartisan" role that a prosecuting attorney assumes in the courtroom. By stepping out of the prosecutor's role, which is to seek justice, and by invoking the authority of his or her own supposedly greater experience and knowledge, a prosecutor invites undue jury reliance on the conclusions personally endorsed by the prosecuting attorney.

*Id.* at 480, 705 P.2d at 1130 (citations omitted). In the instant case the prosecutor used his position of authority to tell the jury that he personally believed that Howard should be put to death. Thus, his statement was improper and constituted prosecutorial misconduct.

■■■■■■■■■■

Second, Mr. Seaton told the jury that "in this case as I see it you're either for the defendant or you're for these unnamed, uncertain victims that I am referring to." The prosecutor then closed his final argument by saying: "And then I ask you, on behalf of those same citizens of the State of Nevada, to come back into this courtroom and tell us beyond a reasonable doubt that you won't stand for the possibility of any future victim at the hands of Sam Howard. Thank you." We have held that arguments asking the jury to place themselves in the shoes of a party or the victim (the Golden Rule argument) are improper. *See* McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984). Equally improper are pleas

to return a death penalty verdict on behalf of the victims. *See* Nevius v. State, 101 Nev. 138, 699 P.2d 1053 (1985). If it is improper to argue that a jury should align itself with the victim, it is equally improper to ask the jury to vote in favor of future victims and against the defendant. *See McGuire, supra.*

Third, Mr. Seaton warned the jury that Howard might escape from prison. In *Collier* this court held that the "prospect of escape is not part of the calculus that the jury should consider in determining a defendant's sentence." *Collier,* 101 Nev. at 479. Since then we have decided Haberstroh v. State, 105 Nev. 739, 782 P.2d 1343 (1989), where we determined that a prosecutor may argue in closing argument that the defendant might kill again if such argument is supported by evidence in the record. This was done on the rationale that a prosecutor should be permitted to argue those facts in evidence and the reasonable inference that can be drawn from them. Following this rationale, we see no reason why a prosecutor should not be permitted to argue that a defendant may attempt to escape if it is supported by the evidence. To this extent, we modify *Collier.* However, there was no evidence presented of any prior escape attempts, and we therefore conclude that the prosecutor's remarks concerning the possibility that Howard might escape were improper.

We further conclude that pursuant to Strickland v. Washington, 466 U.S. 668, 674 (1984), Howard's trial and appellate attorneys were remiss in failing to object to or raise on appeal the prosecutor's three questionable remarks to the jury. Defense attorneys should object to all apparent instances of prosecutorial misconduct.

Howard, however, must also prove pursuant to *Strickland* "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. *Strickland* also held that overwhelming evidence of guilt is a consideration of whether a client had ineffective counsel. *Strickland,* 466 U.S. at 696; *see also,* Ybarra v. State, 103 Nev. 8, 731 P.2d 353 (1987). *Strickland* further specified the standard which should be used to determine whether prejudice occurred during the penalty phase of a capital case:

> When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a

> reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Strickland,* 466 U.S. at 695.

We conclude that Howard has failed to show that he was prejudiced by his attorneys' derelictions pursuant to *Strickland.* First, in the instant case the prosecutorial misconduct complained of was not as serious as that which occurred in other cases we have reversed. Second, we note that the only mitigating circumstances Howard presented to the jury came from his own testimony which was not verified by any transcripts or any other testimony. Third, the prosecution presented the jury with aggravating circumstances by proving that Howard committed the murder during the course of a robbery, and that he had committed a previous felony involving the use or threat of violence. *See* NRS 200.033(2). Fourth, the jury also heard evidence concerning Howard's past violent acts. Hence, the jury had ample reasons to find that the aggravating circumstances outweighed any mitigating circumstances. *See* NRS 175.554(2). Therefore, even absent the errors by Howard's counsel, there was not a reasonable probability that the jury would have reached a contrary result.

Howard asserts that two other arguments made by the deputy district attorney constituted prosecutorial misconduct. He contends that the district attorney's warnings to the jury that Howard could kill again were improper. We disagree. In *Haberstroh, supra,* this court held that where a defendant's past actions support a reasonable inference that he may kill again a prosecutor may comment on the defendant's dangerousness. Howard's past acts provide ample evidence that he could kill again. First, Howard was previously convicted of robbing a female nurse with a gun. He also threatened to kill her, made her take off her clothes and crawl, and stole her car. Second, Howard was convicted of robbing a man at gun point. Third, after Howard was detained for attempting to defraud Sears, he pointed a gun at a security guard and threatened to kill him. Fourth, after a minor traffic accident Howard threatened to kill the other driver. Since Howard's past acts would lead a reasonable person to believe he could kill again, the prosecutor's comments concerning his propensity for violence did not constitute prosecutorial misconduct.

Howard further asserts that the prosecutor improperly compared him to Charles Manson contrary to this court's holding in *Collier.* We disagree. In *Collier,* the prosecutor made the following statement to the jury: "Prison didn't keep Patrick McKenna, one of our more notable inmates, from strangling his fellow inmate in jail, J.J. Nobles." *Collier,* 101 Nev. at 478, 705 P.2d at 1129. This court held in *Collier* that it was improper for a prosecutor to compare a defendant to a notorious criminal. In the instant case the prosecutor said to the jury: "You yourself at sometime may have made the comment, . . . that we ought to get rid of these guys, speaking in general terms about Charlie Manson or somebody like that." The instant case differs from *Collier* in that here the prosecutor made a general statement about criminals. He made no direct comparison between Howard and Manson in his remarks to the jury. The prosecutor's comment thus did not create the type of direct reference which occurred in *Collier.*

Howard also contends that the prosecutor engaged in misconduct when he made the following statement to the jury at the close of the penalty phase: "And now I ask you, let that reasonable doubt benefit society. Let it benefit the citizens of Las Vegas and yourselves and your loved ones, as it did not benefit Doctor Monahan." When a prosecutor begins to rephrase the reasonable doubt standard, he or she is often venturing into troubled water. However, here the remarks were not a distortion of the standard proof. In *Collier* this court held that prosecutorial misconduct occurs when a prosecutor argues that a jury must put a defendant to death or it is not acting morally. *Id.* at 479, 705 P.2d at 1130. The prosecutor's statement did not convey this message to the jury. Thus, Howard's argument lacks merit.

II. *Failure to present penalty phase evidence.*

Howard contends that his attorneys were ineffective because they failed to present evidence to corroborate Howard's testimony at the penalty phase of his trial. Howard insists that he offered to sign releases so that his attorneys could get his records proving that: (1) he received an honorable discharge from the Marines; (2) he received a Purple Heart medal while in Vietnam; (3) he had severe mental problems; and (4) he had a good jail record.

Howard's attorneys testified that Howard refused to sign releases for these records. The court believed Howard's attorneys

rather than Howard. On matters of credibility this court will not reverse a trial court's finding absent a clear showing that the court reached the wrong conclusion. *See* King v. State, 87 Nev. 537, 490 P.2d 1054 (1971). While we are troubled that no records of any type were presented by Howard during the penalty phase, there is no showing that the court ruled incorrectly. Therefore, Howard's argument that his attorneys were ineffective because they failed to get records to corroborate his testimony is without merit.

Finally, Howard claims that his attorneys were ineffective because they offered, aside from his own testimony, no mitigating evidence to the jury. We disagree. First, there is evidence that Howard did not want mitigating evidence presented to the jury. Second, the court found that Howard frustrated his attorneys' attempts to present mitigating evidence. Third, Howard fails to state what additional mitigating evidence, aside from his own testimony, his attorneys should have provided the court. Fourth, the decision as to what mitigating evidence to put forth is a tactical decision based on many factors. Tactical decisions are virtually unchallengeable absent extraordinary circumstances. *Strickland*, 466 U.S. at 691. We find no extraordinary circumstances in the instant case.

### III.   *Sanctions for attorney misconduct.*

The prosecutor, Dan Seaton, made three improper arguments to the jury. In all three instances the case law was unambiguous that such remarks were not permitted. Mr. Seaton is a veteran prosecutor and knows very well that these remarks were improper. This case is not the first time we have dealt with improper arguments made to a jury by Mr. Seaton.[1]

---

[1] A non-exhaustive sampling of cases in which Mr. Seaton has participated reveals a history of persistent disregard for established rules of professional conduct regarding improper argument before a jury. In Downey v. State, 103 Nev. 4, 731 P.2d 350 (1987), Seaton *improperly hinted that there was* additional inculpatory evidence to which the jury was not privy. In Browning v. State, 104 Nev. 269, 757 P.2d 351 (1988), Seaton committed misconduct by characterizing the crime as "a Friday-the-13th kind of scenario." He further characterized the presumption of innocence as a farce, a comment this court deemed "outrageous." In Pellegrini v. State, 104 Nev. 625, 764 P.2d 484 (1988), Seaton referred to the possibility that the defendant could kill again if allowed to live. Although the comment did not require reversal, it nevertheless violated our holding in Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985). In Santillanes v. State, 104 Nev. 699, 765 P.2d 1147

Time after time we say, as we did, for example, in *Santillanes,* 104 Nev. at 702, 765 P.2d at 1149, "[w]e agree that Mr. Seaton's remarks were improper; however we do not believe a reversal is warranted in this case." We say it again here. However, there is no reason why these issues should be continually presented to us by the misconduct of one experienced prosecutor. Rather than deal with the appropriate sanction that should be levied against Mr. Seaton, we refer this case to the Southern Nevada Disciplinary Board of the State Bar of Nevada for review and appropriate action.

## Conclusion

This court will not reverse a district court's holding if substantial evidence supports it. *See* Mitchell v. State, 92 Nev. 458, 552 P.2d 1378 (1976). Substantial evidence supports all of the district court's holdings. Howard's remaining contentions lack merit and the court correctly rejected them. Therefore, we affirm the district court's decision.

YOUNG, C. J. and SPRINGER, J., concur.

STEFFEN, J., with whom MOWBRAY, J., joins, concurring and dissenting:

I concur in the result reached by the majority, but specifically dissent from Part III of the opinion entitled "Sanctions for attorney misconduct."

My decision to separate myself from my respected colleagues on the question of sanctions was reached advisedly and with a degree of regret. The lack of enthusiasm with which I write is not derived from the position I take; rather, it stems from an awareness that whenever this court seeks to instruct the bar through its opinions, greater effect is achieved when the members of the court are united in their views. My reluctance notwithstanding, I am compelled to dissent because I am convinced that my brethren in the majority have allowed an excess of zeal or preoccupation to possibly—and in my opinion, unnecessarily—jeopardize the

(1988), we concluded that Seaton "distinctly traversed the boundary separating proper from improper argument" by communicating to the jury his personal opinion as to the accused's guilt. This, again, was in clear violation of a prior decision of this court, namely, Yates v. State, 103 Nev. 200, 734 P.2d 1252 (1987). In 1989, Seaton again violated our ruling in *Collier. See* Valerio v. State (Case No. 19008, order dismissing appeal filed September 6, 1989). Seaton disingenuously argued that he believed his comment was permissible under our holding in *Pellegrini,* even though *Pellegrini* had not yet been published at the time he made his comments at Valerio's trial.

future of a highly talented prosecutor whose efforts have been of lasting benefit to the state and community which he serves.

I would observe at the outset that I do agree, albeit to a lesser degree than the majority, that improper argument occurred in this case. Under our prior rulings, the prosecutor did inch his way beyond what this court has approved in those areas identified by the majority. Nevertheless, I also agree that the prosecutor's inappropriate argument failed to reach a level that deprived Howard of fundamental fairness in the overall trial. Indeed, neither defense counsel nor the trial judge perceived the need to interfere with Mr. Seaton's argument, a point that I shall presently address.

I am firmly of the opinion that a trial judge has the responsibility to control courtroom proceedings, including the conduct of trial counsel. Moreover, counsel has an obligation to object to comments or actions by opposing counsel whenever their effect may be considered to be prejudicial or otherwise deserving of an objection and perhaps a request for an admonition by the judge. Trial counsel will often withhold objections for tactical reasons, concluding that an objection may appear offensive to the jury or at least an unnecessary annoyance. In any event, for whatever reason, defense counsel was uninspired to object to the comments which this court seizes upon as a final straw.[1] More importantly, however, the veteran trial judge who presided over the trial was unmoved by the prosecutor's remarks. I find it somewhat unseemly for this court to refer the prosecutor to the embarrassing stigma and ordeal of a bar discipline proceeding when neither

---

[1]It is clear from the majority opinion that the harsh sanction imposed against Mr. Seaton is calculated to exact payment for sins both past and present. In that regard, it would appear that the beleaguered prosecutor is actually being subjected to double punishment for historical conduct that has been previously criticized and otherwise addressed by this court.

Another reason why I believe the metaphorical "camel's back" should have endured the latest burden from Mr. Seaton is that I have seen conduct far more egregious passing muster in other courts. As an example, one need not look beyond the case of Darden v. State, 329 So.2d 287 (Fla. 1976). Some of the comments from the prosecutor included the following:

"The second part of the trial I will request that you impose the death penalty. I will ask you to advise the Court to give him death. *That's the only way that I know that he is not going to get out on the public. It's the only way I know. It's the only way I can be sure of it . . . .*"

. . . .

"I don't know, he said on final argument I wouldn't lie, as God is my witness, I wouldn't lie. *Well, let me tell you something: If I am ever over in that chair over there, facing life or death, I guarantee you I will lie until my teeth fall out.*"

. . . .

"*I wish he* [the victim] *had had a shotgun in his hand when he walked in the back door and blown his* [the defendant's] *face off. I wish that I*

the trial judge nor defense counsel was motivated to find fault with the prosecutor's conduct. It is the trial judge who should refer trial counsel who are clearly deserving of such sanctions to a bar discipline board, just as we should refer appellate counsel who are similarly deserving. I find it highly anomalous that this court, which apparently has found no basis for criticizing the control of the trial arena by the presiding trial judge, nevertheless perceives the prosecutor's conduct as being sufficiently egregious to warrant the supervening sanctions imposed by the majority.

. I am also concerned that the majority's preoccupation has reached a crescendo prematurely. I am quite willing to acknowledge Mr. Seaton's obvious dislike for certain of this court's rulings and his obstinate disregard of our previous admonitions. Moreover, I am not entirely without sympathy for the majority's

> *could see him sitting here with no face, blown away by a shotgun,* but he didn't."
>
> . . . .
> ". . . *I wish someone had walked in the back door and blown his* [the defendant's] *head off at that point.*"

*Id.* at 289-290 (emphasis in original).

Justice Sundberg, in his dissent, included some of the following comments from the prosecutor:

> "He [the defendant who was out of prison on a brief furlough when he committed the crimes] shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash."
>
> . . . .
> "[A]nd he [the defendant] fired in the boy's back, number five, saving one [bullet]. Didn't get a chance to use it. I wish he had used it on himself. . . ."
>
> . . . .
> ". . . And Mr. Darden saved one. Again, I wish he had used it on himself. . . ."
>
> . . . .
> In asserting that the appellant had attempted to change his appearance subsequent to the date of the crimes the prosecutor concluded with the remark, "The only thing he hasn't done that I know of is cut his throat."

*Id.* at 291, 292-293 (dissenting opinion).

The Florida Supreme Court concluded that the quoted remarks were fair comments by the prosecutor. *Id.* at 290. In Darden v. Wainwright, 477 U.S. 168 (1985), the United States Supreme Court characterized the prosecutor's remarks as "improper," but concluded that they did not deprive Darden of a fair trial and that the "argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id.* at 180-82.

I burden the reader with the *Darden* history only because it is illustrative of a more tempered approach to a trial record reflecting improper prosecutorial argument. I am of the opinion that justice would have been served if this court had simply analyzed the prosecutor's remarks in the instant case, determined their propriety and whether they deprived Howard of a fair trial.

unwillingness to continue dancing to the same tune. On the other hand, I am not entirely convinced that Mr. Seaton's seeming recalcitrance is more reflective of disdain for this court's rulings than it is the product of a prosecutorial zeal that is characteristic of his efforts. It in fact may involve an element of both. As Mr. Seaton himself has explained to this court, there are times when the heat of battle will produce some outpourings that, under more quiescent settings, would never reach human ears. And yet, I have sufficient regard for Mr. Seaton's intelligence and control mechanisms to believe that if he truly concentrated on the inner periphery of acceptable argument as opposed to its outer limits beyond which the temptation to travel is obviously great, he could readily and effectively eliminate future sources of conflict with this court.

In short, I would have voted to meet with Mr. Seaton personally in an atmosphere of reason and respect to discuss our mutual concerns and differences. My respect and appreciation for his efforts of the past and the talent and commitment he brings to the prosecutor's office would cause me to accord him nothing less. The people of Nevada are indeed fortunate to have men and women of Mr. Seaton's caliber serving as prosecutors and defenders in our criminal justice system. In many instances, they could vastly improve their situations financially by entering the private practice of law. Although this court must be vigilant in exacting high ethical standards of practice from our attorneys both in the public and private sectors of the law, we must also be careful not to overreact to the point of discouraging public service where it is not truly warranted. My own experience on the bench causes me to believe that judges in particular ought to be wary and introspective before casting stones capable of inflicting injury or impairing careers when questions of judgment rather than honesty are at stake.

For the reasons set forth above, I do not agree with the majority's sense of justice concerning Mr. Seaton and therefore dissent from the aspect of the majority's opinion. I do, however, concur in the result of the opinion insofar as it affirms the judgment of the district court.