ROBERT YBARRA, JR., Appellant, v. THE STATE OF NEVADA, Respondent.

No. 17462

January 21, 1987                                   731 P.2d 353

*Crowell, Crowell, Crowell & Susich,* Carson City, for Appellant.

*Brian McKay,* Attorney General, and *Brian Randall Hutchins,* Deputy Attorney General, Carson City; *Daniel Papez,* District Attorney, White Pine County, for Respondent.

# OPINION

*Per Curiam:*

Ybarra was convicted of murder, sexual assault, battery, and first degree kidnapping, and sentenced to death. We affirmed his conviction on appeal. Ybarra v. State, 100 Nev. 167, 679 P.2d 797 (1984), *cert. denied,* 470 U.S. 1009, 105 S.Ct. 1372 (1985). He filed his supplemental petition for post-conviction relief in June 1985 and alleged forty-seven claims of error, multiple instances of ineffective assistance of counsel at trial and on appeal, and several substantive claims. The district court held a two day hearing in September 1985 and took the matter under submission. In July 1986, the district court issued its fifty-eight page order denying relief. Ybarra now renews five of his claims of ineffective assistance of counsel at trial, and his claim of prosecutorial misconduct. We agree with the district court that none of his claims warrants relief.

Ybarra's claims of ineffective assistance will be evaluated under the "reasonably effective assistance" standard set out in Strickland v. Washington, 466 U.S. 668 (1984), adopted by this court in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), *cert. denied,* 471 U.S. 1004 (1985); *see also* Point v. State, 102 Nev. 143, 717 P.2d 38 (1986). In *Strickland,* the high court stated the test as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. The high court also said a reviewing court need not address the two components of the test in the order stated. *Id.* at 697. "In particular, a court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

Here, because of the overwhelming evidence of Ybarra's guilt, the issue of prejudice will be examined first. The *Strickland* court noted that a verdict or conclusion weakly supported by the record is more likely to have been affected by counsel's errors than one with overwhelming record support. *Id.* at 696. The defendant must show that the decision reached would reasonably likely have been different absent the asserted errors. *Id.* This is a showing Ybarra cannot make because of the overwhelming evidence of his guilt, particularly in connection with the murder charge. Ybarra's fingerprints were found on a gas can located at the scene where the victim was burned. Bootprints and tire tracks found at the scene matched Ybarra's boots and truck tires. The victim's fingerprints were found on a beer can in Ybarra's trailer, and the victim's friend positively identified Ybarra as the man who had picked the two girls up and later left with the victim after the friend went home. *Ybarra,* 100 Nev. at 170. In light of this strong evidence, it is unlikely the jury would have reached a different conclusion concerning Ybarra's guilt. In fact, defense counsel conceded his guilt in opening statement, and Ybarra's bizarre version of the killing was introduced into evidence through the testimony of a psychiatrist.

Even though Ybarra has failed to make the requisite showing of prejudice under *Strickland,* which obviates addressing the other prong of the test, we will briefly analyze each alleged instance of attorney error. Because Ybarra had a number of counsel at trial and on appeal, a brief history of his representation is in order.

Ybarra was first represented by an inexperienced public defender, who was assisted by several more experienced members of the public defender's office. J. Gregory Damm assisted at the preliminary hearing. He was replaced by Martin Weiner, who conducted the voir dire, and worked on the change of venue motion which was appealed to this court. Ybarra became incompetent during the pendency of the appeal on the venue motion, and was committed to Lake's Crossing. Thomas Perkins was involved with the case at that time, but did not make any court appearances. When Ybarra was finally returned to Ely for trial, Norman Herring was acting as lead counsel. He continued his representation through the trial and penalty hearing, except for the prosecution's final closing argument.

Robert Bork wrote the initial briefs on appeal, after the public defender unsuccessfully moved to be relieved as counsel. Perkins replaced Bork as counsel on appeal, and Laura Fitzsimmons was co-counsel. They reopened the briefing and filed a supplemental

brief. Perkins found the Seattle attorney who drafted the petition for certiorari to the United States Supreme Court after the direct appeal was unsuccessful. Ybarra's present counsel, Crowell, Crowell, Crowell & Susich, were appointed by the district court in White Pine County at the beginning of the post-conviction proceedings.

## Failure to File Pretrial Petition for Habeas Corpus

Ybarra first claims counsel was ineffective for failing to file a pretrial petition for writ of habeas corpus challenging the sufficiency of the evidence at the preliminary hearing. There was no argument before the magistrate concerning the sufficiency of the evidence and no petition for writ of habeas corpus was filed. Defense counsel filed a motion to dismiss the kidnapping and battery charges because of insufficient evidence about a year and a quarter after Ybarra's arraignment in district court. Attached to this motion was McGuire's affidavit stating that the motion had not been brought earlier because he was inexperienced and unfamiliar with Nevada criminal procedure.

In addressing this claim below, the district court found counsel had not been ineffective because the initial decision not to challenge the sufficiency of the evidence was not made by McGuire alone, but by McGuire and Damm. McGuire testified at the post-conviction hearing that he and Damm concluded the State had shown probable cause to hold Ybarra to answer. Further, the district court noted that there was arguably sufficient evidence presented at the preliminary hearing to support the charges.

Our independent review of the transcript of the preliminary hearing confirms this view. Ybarra argues the evidence of sexual assault and kidnapping was marginal at best. He correctly notes that the evidence does show the victim went willingly with him, but this does not mean a kidnap did not occur. NRS 200.310 defines first degree kidnapping in Nevada. One of the ways it can be committed is by leading, enticing, taking or carrying away or detaining any minor with the intent to perpetrate any unlawful act upon the minor. NRS 200.310(1); *see also* Jensen v. Sheriff, 89 Nev. 123, 125, 508 P.2d 4, 5 (1973). The evidence of sexual assault presented at the preliminary hearing includes the presence of sperm in the victim's vagina found during the autopsy, and the victim's own statement to her rescuers that she had been raped. From this evidence, one could conclude that Ybarra had enticed, or led the victim away, or detained her for the purpose of the sexual assault, an unlawful act. Thus, both the sexual assault and first degree kidnapping charges were supported by sufficient evidence at the preliminary hearing. *See* Sheriff v. Crockett, 102

Nev. 359, 724 P.2d 203 (1986) (slight evidence is enough). Counsel was not ineffective for believing the State had probable cause to hold Ybarra, and therefore not challenging the sufficiency of the evidence by pretrial petition for writ of habeas corpus.

### Ybarra's Mental Competence at Trial

Ybarra next contends trial counsel permitted him to be tried when there were serious doubts as to his mental competency. There was ample evidence of Ybarra's competency when it was determined he could return from Lake's Crossing to stand trial in Ely. Five doctors agreed Ybarra was competent, and the district court thought they were correct. McGuire testified that he and Herring had decided not to further contest competency because all the doctors had found Ybarra competent, Ybarra himself believed he was competent and was anxious to go to trial. From this it is clear there were no serious doubts in anyone's mind that Ybarra was competent to be tried at the time that determination was made.

Ybarra further argues that counsel was ineffective for allowing him to be tried while under medication. He claims a defendant who is tried while medicated or sedated is denied due process, relying on State v. Murphy, 355 P.2d 323 (Wash. 1960), where a capital defendant was granted a new trial because he had been drugged. However, the majority of courts that have considered the issue have held that competency may be attained through the use of medication. *See, e.g.,* State v. JoJola, 553 P.2d 1296, 1299-1300 (N.M.Ct.App. 1976); State v. Buie, 254 S.E.2d 26, 28 (N.C. 1979), *cert. denied,* 444 U.S. 971 (1979); Ake v. State, 663 P.2d 1, 6-7 (Okla.Crim.App. 1983), *rev'd on other grounds,* Ake v. Oklahoma, 470 U.S. 68 (1985); State v. Law, 244 S.E.2d 302, 305-08 (S.C. 1978); State v. Stacy, 556 S.W.2d 552, 557-59 (Tenn.Crim.App. 1977). Ybarra argues competency attained through drugs is not competency, but this argument is not supported by the cases just cited, or by the conclusions of the five doctors who determined Ybarra was competent, and knew he was on medication. In sum, Ybarra was not forced to stand trial while incompetent, and defense counsel was not ineffective for allowing him to be tried while on medication.

### Failure to Suppress the Victim's Statements

Ybarra next argues defense counsel should have filed a motion to suppress the victim's statements. He claims they might not have been admissible as dying declarations since there was no

evidence the victim was aware she was about to die. This claim is totally without merit.

McGuire and Herring testified that the defense made a tactical decision not to move to suppress the statements because: 1. they would be admissible as dying declarations; 2. the defense did not want to make motions with no chance of success because it would detract from others with more merit; and 3. the victim's statements contained inconsistencies the defense wanted to stress before the jury. In *Strickland,* the high court noted that ". . . strategic choices, made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . ." *Id.* at 690. Since it is apparent from counsels' testimony that the decision to forego objection to the admission of the victim's statements was a "strategic choice," this claim of error is meritless.

### Failure to Voir Dire on the Insanity Defense

Ybarra next claims his counsel erred by failing to voir dire the jury on the insanity defense. When the jury was impaneled, the plea was not guilty, but by the time the case came to trial, after several plea changes, the plea was not guilty by reason of insanity. The defense had moved to discharge the jury, primarily because of the lengthy interval between impanelment and trial, thirteen months. The district court denied the motion.

As the district court noted, in Nevada a defendant may tender a plea of not guilty by reason of insanity *during* trial. NRS 174.035(2).[1] There is no further provision allowing for supplemental voir dire of the jury on an insanity defense when the change of plea occurs during trial. Ybarra changed his plea during trial. Since his jury had been sworn when it was first impaneled, jeopardy then attached, and technically the trial began at that point. Ex Parte Maxwell, 11 Nev. 428, 434-435 (1876). Because Ybarra changed his plea during trial, counsel was not ineffective for failing to voir dire the jury on the insanity defense.

### Failure to Object to Prosecutorial Misconduct

Ybarra's final arguments concern counsel's failure to object to prosecutorial misconduct in closing argument in the penalty

---

[1]NRS 174.035(2) provides:

The defendant may, in the alternative or in addition to any one of the pleas permitted by subsection 1, plead not guilty by reason of insanity. A defendant who has not so pleaded may offer the defense of insanity during trial upon good cause shown. Under such plea or defense, the burden of proof is upon the defendant to establish his insanity by a preponderance of the evidence.

phase. Herring and McGuire both argued in closing for the defense, but Herring left before the prosecution made its final closing argument. Ybarra claims McGuire's inexperience precluded objection to improper argument by the prosecution.

Both Herring and McGuire argued facts not presented by Ybarra's case. Herring, who argued first, began his remarks by relating to the jurors his experiences in Vietnam, to emphasize that all legal killing is not morally right. He then went into a long discourse on Biblical subjects to show that some who killed were forgiven by God and became his chosen. He described the firing squad executions in Utah of Gary Gilmore and another. He also graphically portrayed details of execution by lethal gas in Nevada. In other parts of his argument, Herring described capital offenses through the ages in different countries. McGuire's argument focused primarily on mitigating circumstances. However, he also mentioned other capital cases in which he had been involved, and other murder cases in which the death penalty was not pursued.

In response, the prosecutor discussed Gary Gilmore's victims in some detail. He also remarked upon the Biblical references in Herring's argument and made some references of his own. He discussed the other murder cases referred to by McGuire and talked about mitigating circumstances. Then he began to discuss a case in New York, where a young woman was repeatedly attacked on the street while thirty-eight people looked on and did nothing. He exhorted the jury not to respond in a similar fashion. The prosecutor also stated that cancer is a problem which can only be treated by surgery, and said that, "Likewise certain people are no longer fit to be a part of society. They reach a point by their conduct where they need to be cut out, eliminated."

As the district court noted, this argument was improper, as was the argument of defense counsel. Factual matters outside the record are not generally proper subjects for argument at penalty unless counsel is discussing general theories of penology, punishment, deterrence and the death penalty. Collier v. State, 101 Nev. 473, 478, 705 P.2d 1126, 1129 (1985). The district court correctly found that most of the prosecutor's improper remarks were invited by the far ranging arguments of defense counsel, citing United States v. Young, 470 U.S. 1 (1985). Both defense counsel and the prosecution showed unprofessional conduct in their arguments.

It is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds. Just as the conduct of prosecutors is circumscribed, "[t]he interests of society in the preservation of courtroom control by

the judges are no more to be frustrated through unchecked improprieties by defenders.''

*Young* at 8, citations omitted. Further, McGuire testified that he knew the prosecutor's remarks were improper, but felt that the defense had "opened the door."

On these facts, there is no reversible error, either in counsel's failure to object or in the prosecutor's improper remarks. While it is true this court condemned remarks similar to those here in *Collier,* there was no invited error in *Collier* and defense counsel there promptly objected to most of the improper comments. *Collier,* 101 Nev. at 477-481. Moreover, where, as here, evidence of a defendant's guilt is overwhelming and the death penalty is particularly appropriate, prosecutorial misconduct may be deemed harmless error. Nevius v. State, 101 Nev. 238, 248, 699 P.2d 1053, 1059 (1985); *see also* Sechrest v. State, 101 Nev. 360, 368, 705 P.2d 626, 632 (1985); Miranda v. State, 101 Nev. 562, 569-572, 707 P.2d 1121, 1126-1127 (1985), *cert. denied,* ...... U.S. ......, 106 S. Ct. 1239 (1986); Jones v. State, 101 Nev. 573, 577-578, 707 P.2d 1128, 1131 (1985); Milligan v. State, 101 Nev. 627, 639, 708 P.2d 289, 296 (1985), *cert. denied,* ...... U.S. ......, 107 S. Ct. 238 (1986).

In sum, none of Ybarra's claims entitle him to relief. We therefore affirm the district court's ruling, and in so doing commend Judge Hoyt for the thorough job he did analyzing the forty-seven claims of error raised below. We adopt as our own his findings on all issues not addressed in this opinion. We note that federal courts generally give great deference to state court findings in federal habeas corpus matters. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539 (1980), 455 U.S. 591 (1982). We therefore urge district courts in this state to make specific findings in post-conviction matters because many of our criminal defendants find their way to federal court after they have exhausted their state remedies. *E.g.,* Shuman v. Wolff, 791 F.2d 788 (9th Cir. 1986). *cert. granted,* ...... U.S. ......, 107 S. Ct. 431 (1986); Neuschafer v. Whitley, 630 F.Supp. 897, *remanded sub nom.* Neuschafer v. McKay, 807 F.2d 839 (1987).

Because Ybarra's assignments of error are meritless, we affirm the district court's denial of Ybarra's supplemental petition for post-conviction relief.