EDWARD THOMAS WILSON and JOHN STEVEN OLAUSEN, Appellants, v. THE STATE OF NEVADA, Respondent.

No. 18496

March 30, 1989                    771 P.2d 583

---

*Lawrence D. Wishart,* Reno, for Appellant Wilson.

*Phillip M. Stone,* Reno, for Appellant Olausen.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Gary Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Appellants John Olausen and Edward Wilson pleaded guilty to first degree murder, robbery with use of a deadly weapon, and kidnapping with use of a deadly weapon, and the district court sentenced them to death. We upheld their sentences in Wilson v. State, 99 Nev. 362, 664 P.2d 328 (1983), and in Wilson v. State, 101 Nev. 452, 705 P.2d 151 (1985). Appellants then sought post-conviction relief in the district court, claiming that their trial counsel's performances at the 1979 penalty hearing violated their Sixth Amendment right to effective assistance of counsel. The district court denied their petitions, and Wilson and Olausen appeal.

Olausen's claim has merit because the record indicates that his attorney neglected to present a wealth of mitigating evidence that was available to him at the time of the penalty hearing. Moreover, counsel made a number of damaging remarks to the sentencing panel during his opening statement and closing argument. Therefore, because he did not receive the effective assistance of counsel during the sentencing phase, we now vacate Olausen's death sentence and remand his case to the district court for another penalty hearing. We affirm the district court's decision with respect to Wilson.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court defined standards for a defendant's Sixth Amendment right to effective assistance of counsel. The court described two components of a showing of ineffective assistance of counsel in the context of a murder conviction or death sentence. First, the accused must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Second, defendant must demonstrate that the attorney's deficient performance prejudiced his defense. *Id.* at 687.

In order to prove prejudice, the accused must show that there is a reasonable probability that, but for counsel's mistakes, the result of the proceeding would have been different. *Id.* at 694.

Thus, when a defendant challenges a death sentence, he must demonstrate a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Id.* at 695.

Olausen argues that his attorney's decision not to present a large body of mitigating evidence, coupled with counsel's egregious remarks before the sentencing panel, denied him the effective assistance of counsel. We agree.

The bulk of the five-day penalty hearing consisted of the district attorney's presentation of aggravating factors. James Forman, Olausen's trial counsel, asked only his mother and father to testify on his behalf. Although their testimony was relevant, it would naturally appear somewhat biased in favor of Olausen. Incredibly, given the wealth of other mitigating evidence available to him, the parents' testimony was the only evidence presented by Forman in support of Olausen's attempt to avoid a death sentence.

Forman refused to allow Olausen's parents to testify as to his difficult childhood following their divorce and Mr. Olausen's remarriage to an emotionally unstable woman. He also refused to present the father's testimony concerning phone calls made to both parents two days before the murder, when the eighteen-year-old Olausen asked for permission to return home, but was rejected by both of his parents.[1]

John Olausen (Olausen's father), testified at the 1987 hearing for post-conviction relief. Mr. Olausen stated that in 1979, he told Forman about his son's difficult childhood and the problems the family had endured in the recent past. Mr. Olausen also told Forman about his son's involvement in sports activities and the Boy Scouts.

According to Mr. Olausen, Forman's response to this information was "[h]e's not a kid anymore, he's a murderer. *He's someone that it would be a waste of time to present that type of background* . . . and this stuff, . . . it would just piss off the judge." (Emphasis added.) Apparently, Mr. Forman decided that an attempt to save his client from the death penalty would not be worth the effort.

Furthermore, Forman failed to take advantage of NRS 7.135 which permits court-appointed attorneys to employ investigators to assist them in preparing their client's defense. When Mr.

---

[1] Olausen's stepmother, Diane, testified at the 1987 hearing for post-conviction relief. She said that her husband told Forman "many times" about Olausen's telephone plea to return home shortly before the murder. However, Forman was disinterested in this information because "it didn't pertain to the case and . . . it wouldn't help him." Forman told Mr. Olausen that "[w]e have to go with litigation, not hurt, . . . and this is bullshit."

Olausen personally offered to hire an investigator in the preparation of his son's case, Forman became defensive and said: "I'm only getting $7,500 for this case. If I didn't want to handle it or I didn't think I could, I sure wouldn't bother with it. . . . It's not important, that type of stuff, it would just waste the court's time."

Before the 1979 penalty hearing, Olausen's sister, Suzanne, contacted approximately twenty people in his home town of Chico, California who told her that they would be willing to testify on Olausen's behalf.[2] When Suzanne told Forman that these people were willing to testify, Forman discouraged the idea because it would waste court time.[3] Forman was also disinterested in Olausen's struggle with dyslexia because "[i]t didn't have anything to do with the crime that Olausen had committed." When Suzanne told Forman that Olausen saved his cousin's life when they were children, Forman responded: "He was a child. They were boys. It [doesn't] have any bearing. He's a man now."

After his arrest in 1979, detectives interrogated Olausen for approximately one hour and ten minutes. Although the police officers ostensibly recorded Olausen's entire confession, there were over fifteen minutes of time unaccounted for on the cassette tape. Mr. Olausen was present at his son's interrogation, and later testified that the detectives turned off the tape recorder when Olausen began to become emotional. Moreover, although he

---

[2]At Olausen's 1987 hearing for post-conviction relief, Forman testified that in a capital case, he would not want to omit any mitigating evidence at the penalty phase. Nevertheless, in his 1979 opening statement, Forman told the sentencing panel that "I *could* put the hundred some-odd letters I have before this court, letters that say he's a good kid; he's not violent." Thus, the record demonstrates that Forman had a number of letters in support of Olausen in his possession, but he refrained from producing them for the panel.

[3]At the 1987 hearing for post-conviction relief, the leader of Olausen's former Boy Scout troop testified as to his scout participation and difficult childhood. His former art instructor testified as to Olausen's chaotic home environment and his tendency to be a "follower." His high school guidance counselor spoke of Olausen's unstable family life, his learning disability, and his efforts to do his best in school in spite of his problems. The athletic director of his former high school described Olausen as a good athlete and a "self-motivator." Olausen's cousin testified that appellant saved his life when they were children. His former girlfriend's mother described how Olausen was thrown out of his home and "left with no one." His closest childhood friend described Olausen's unhappy home, and how he became part of his friend's family. Olausen's younger sister Suzanne described how he tried to keep the family together after their parents' marriage fell apart, and Olausen's close relationship with his grandmother. After reviewing the record, we fail to comprehend why the presentation of any of this easily accessible evidence would have wasted the sentencing panel's time.

remembered his son expressing remorse for his crime and sympathy for the victim's family, Mr. Olausen testified that the final recording included none of these statements.

On several occasions before the penalty hearing, Mr. Olausen spoke to Forman regarding the missing segments of the tape. Forman told Mr. Olausen that since "the whole courtroom's full of cops, . . . [it would] be useless to try and bring something like this when we're the bad guys."

Moreover, in 1979, Douglas Mathewson, a Mormon bishop, visited Olausen several times in his jail cell. On those occasions, Olausen expressed his sorrow and remorse for his actions. Olausen also asked the bishop for instruction in the process of repenting. Mathewson visited Forman prior to the sentencing hearing and raised the issues of Olausen's sorrow, remorse and repentance. Forman never asked Mathewson to testify.

We note from the record that Fred Stites and David Lani, the two young men prosecuted with John Olausen and Edward Wilson, received sentences of life imprisonment without possibility of parole for their complicity in the same homicide. As mitigating circumstances for Stites and Lani, the sentencing panel found that both young men exhibited remorse for their crime. Not surprisingly, the panel failed to make this same finding with respect to Olausen, who received a death sentence. Accordingly, we disagree with Forman's conclusion that it would have been "useless" to present evidence of Olausen's remorse at the 1979 penalty hearing.

When, as in the instant case, judges have sentencing discretion, possession of the fullest information possible regarding the defendant's life and characteristics is essential to the selection of an appropriate sentence. Lockett v. Ohio, 438 U.S. 586, 603 (1978). A sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence. Skipper v. South Carolina, 476 U.S. 1, 4 (1986).

Forman's failure to present more mitigating evidence on Olausen's behalf was error serious enough to abrogate Olausen's Sixth Amendment right to counsel. Because of the gravity and sheer quantity of counsel's omissions, there exists a reasonable probability that, absent Forman's errors, the sentencing panel would have concluded that the balancing of aggravating and mitigating circumstances did not warrant death. Strickland v. Washington, 466 U.S. 668, 695 (1984). Therefore, Forman's deficient performance prejudiced Olausen and he is entitled to a new sentencing proceeding. *Id.* at 687.

In addition, Forman's performance before the sentencing panel was remarkable not for the forcefulness of his advocacy, but rather for the ambivalence he showed toward Olausen's case. In both his opening statement and closing argument, Forman alternated between comments intended to spare his client from the death penalty, and remarks that were more appropriate for the district attorney.

At the start of his opening statement, Forman indicated to the sentencing panel his perceived weakness of Olausen's case when he said: "I will be very honest with this court that until five minutes ago, I didn't know which way I was going to proceed." Continuing, Forman told the three-judge panel: "I could put him up to say he is sorry, but everybody is sorry at this time. I'm sorry, and I'm sure they would say they are sorry." He downplayed the significance of Olausen's remorse again when he said: "The remorse today is not going to bring Officer Hoff back. It isn't going to help these defendants."

Finally, Forman summed up the reasons for not giving Olausen the death penalty: "I contend that the circumstances just aren't there. . . . The evidence of Mr. Wilson's influence over these men, I don't know. He's young; he's eighteen years of age, and he is sorry, and I think that is probably the most significant mitigating circumstance."

In his closing argument, Forman made several comments that assisted the prosecution rather than his client. Forman warmed the judges to Olausen's plea for mercy by stating: "I don't know if Fred stuck him full of holes or if Steve [Olausen] stuck him full of holes."

Later, Forman championed the district attorney's position when he said: "I certainly hope the court hasn't been offended by possibly my curt attitude with regard to Mr. Olausen, but I think this court has a duty—has a duty to law enforcement, has a duty to the prosecution to weigh this case from a legal standpoint."

Forman continued his sterling advocacy with the thought that: "I'm sure friends of Officer Hoff—*I'm sure if it was my friend, I would want them dead.* But I would have to go home and have to think about the oath that I took, the education that I have spent half of my life acquiring, and the fact that this court has a duty to weigh the circumstances of this case. . . ." (Emphasis added.) We believe that after Mr. Forman made the above comments, there was little doubt as to which penalty Olausen would receive.

Forman also distanced himself from Olausen when he told that court that "[i]f I thought executing these three young men would bring Officer Hoff back, I would say: Execute them. But we are

not going to bring Officer Hoff back. I have a job; I have a job as an attorney. I took an oath to do a job. . . .''

In his closing argument in King v. Strickland, 748 F.2d 1462 (11th Cir. 1984), *cert. denied,* 471 U.S. 1016 (1985), the defense attorney unnecessarily stressed the horror of the crime and his status as an appointed representative. *Id.* at 1464. Reminding the sentencer that the undertaking is not by choice represents a breach of counsel's duty of loyalty to his client. *Id.* The Eleventh Circuit Court of Appeals held that counsel's argument, combined with counsel's failure to present mitigating evidence, denied defendant effective assistance of counsel. *Id.*

In this case, Forman never specifically mentioned his appointed status, but he clearly distanced himself from Olausen during his closing argument. While never mentioning the details of the murder, his statement that, if he was the decedent's friend, he would want the defendants dead, stressed the inhumanity of the crime. When combined with his failure to present available mitigating evidence, Forman's remarks to the sentencing panel denied Olausen effective assistance of counsel. *King,* 748 F.2d at 1464.

Accordingly, for the reasons discussed above, we vacate Olausen's death sentence and remand his case to the district court for a new sentencing hearing.

Wilson argues that his counsel's failure to present certain mitigating evidence before the sentencing panel constituted ineffective assistance of counsel. While counsel's efforts may have been less than heroic, the record on appeal indicates that his performance was within constitutional standards.

After meeting with Wilson's family before the penalty hearing, counsel decided not to have them testify. He was afraid that their ''mitigating'' testimony would do more harm than good. Specifically, counsel was concerned that on cross-examination, Wilson's father or sister would have to discuss an incident which occurred when Wilson was eighteen. He was arrested in Sacramento, and his older sister posted his bail. Shortly afterwards, Wilson came to live with his sister and stole a necklace. He returned the necklace approximately one week later.

*Strickland* establishes a strong presumption that counsel's decisions were ''sound trial strategy.'' 466 U.S. at 689. Given counsel's legitimate concerns that Wilson's own family might deliver damaging testimony, his decision not to call the family to testify did not vitiate Wilson's Sixth Amendment right to counsel.

Prior to the penalty hearing, counsel made no effort to consult with people unrelated to Wilson, who might have been able to

offer favorable testimony. However, at the 1987 hearing for post-conviction relief, only Wilson's father and brother offered mitigating evidence in his behalf. They described how Wilson worked at his father's service station as a boy in order to assist the family during difficult financial times. As well, Wilson's brother described his prowess as a high school athlete and student leader.

It is clear that the limited amount of mitigating evidence offered by Wilson's father and brother at the hearing for post-conviction relief does not outweigh the aggravating circumstances present in his case. Although counsel may have been lax in not searching for more unrelated, but favorable witnesses for Wilson, we have no evidence that such a search would have been fruitful. Thus, unlike Olausen, Wilson suffered no prejudice by counsel's failure to present more mitigating evidence. Therefore, with respect to Wilson, the record on appeal does not support a finding of ineffective assistance of counsel. *Strickland,* 466 U.S. at 687-695.

After further review of the record, we conclude that Wilson's other contentions lack merit. Accordingly, we affirm the district court's decision denying him post-conviction relief.[4]

---

[4]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.