JOHN FRANCIS MAZZAN, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 18758

November 27, 1989                                    783 P.2d 430

[Rehearing denied, March 6, 1990]

*Donald York Evans,* Reno, for Appellant.

---

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Gary Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, STEFFEN, J.:

On October 19, 1979, a jury convicted appellant of first degree murder. Following a penalty hearing, appellant was sentenced to death. This court affirmed appellant's conviction but vacated his sentence and remanded the case for a new penalty hearing. Mazzan v. State, 100 Nev. 74, 675 P.2d 409 (1984). Laurence McNabney, appellant's appointed counsel at his trial and first penalty hearing, represented appellant again at the second penalty hearing.[2] The jury at the second penalty hearing also set the penalty at death, and on direct appeal, we affirmed the sentence. Mazzan v. State, 103 Nev. 69, 733 P.2d 850 (1987). Subsequently, appellant filed in the district court a petition for post-conviction relief and a motion for a stay of execution. The district court granted the stay and held a hearing on appellant's petition. On December 2, 1987, the district court entered an order denying appellant's petition for post-conviction relief. This appeal followed.

Appellant contends that he was denied his right to effective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984) and Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), cert. denied, 471 U.S. 1004 (1985), at his second penalty hearing. In particular, appellant contends that his attorney's failure to present testimony of several character witnesses as evidence of mitigating circumstances manifests ineffective assistance of counsel.

At the hearing on appellant's petition for post-conviction relief, appellant presented testimony by his mother, his former wife, a business associate and some friends and acquaintances. These witnesses provided favorable testimony regarding appellant's character at the time they were in contact with him, and indicated they would have been willing to testify at appellant's penalty hearing. Appellant states that he was entitled to present such character evidence under NRS 175.552 and Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982). Appellant further asserts that his mother could have presented an effective plea for mercy to the sentencing jury, had counsel called her to testify, and that he was entitled to have her make such a plea under Caldwell v. Mississippi, 472 U.S. 320, 330-31 (1985).

---

[2]It is noteworthy that appellant specifically requested representation in his second penalty hearing by counsel whose previous efforts resulted in a conviction of first degree murder, a sentence of death, and a determination of ineffectiveness of counsel by this court.

Under the two-part test of Strickland v. Washington, 466 U.S. at 687, in order to obtain relief, appellant must (1) "[show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "show that the deficient performance prejudiced the defense," and that "counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable."

In deciding an ineffective assistance of counsel claim, a reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Moreover, the "distorting effects of hindsight" must be avoided in the court's review. *Id.* at 689.

Appellant's penalty hearing counsel testified that he made a conscious, strategic decision to focus his presentation on evidence of Mazzan's good character while in prison, to the exclusion of other evidence, in support of his argument for a sentence of imprisonment rather than imposition of the death penalty. Counsel presented the testimony of a prison chaplain and a prison counselor at the penalty hearing. Counsel intended to show by this testimony that Mazzan's life had value and meaning in prison and should therefore not be taken. These witnesses were in frequent contact with appellant and spoke favorably of his character as perceived by them shortly before the time of the penalty hearing.

Appellant's counsel also presented the victim's father to the sentencing jury, who testified that he had no affirmative desire that the death penalty be imposed upon appellant. Counsel's strategy of thereby attempting to allay any desire or perceived need for retribution among the jurors was reasonable.

Counsel was aware of the possibility of calling appellant's mother and some of the other witnesses whose absence constitutes the basis for appellant's complaint; counsel had presented their testimony at the guilt phase of appellant's trial and had discussed the choice of witnesses at the penalty hearing with appellant. Counsel's choice of witnesses at the penalty hearing was an informed, strategic choice, and is therefore "virtually unchallengeable." *See Strickland,* 466 U.S. at 690, quoted in Ybarra v. State, 103 Nev. 8, 14, 731 P.2d 353, 357 (1987). *See also* Griffin v. Wainwright, 760 F.2d 1505, 1514 (11th Cir. 1985), *cert. denied,* 476 U.S. 1123 (1986).

The witnesses available but not called could have testified, consistent with their testimony at the hearing on appellant's petition for post-conviction relief, regarding appellant's character as they had perceived it as much as several years before he committed the crime. Testimony regarding appellant's lack of a violent nature in the past, however, would likely carry little weight in view of his recent conviction for a brutal murder. *See* Griffin, 760 F.2d at 1512. Counsel's decision to forego presenting such testimony does not necessarily constitute ineffective assistance. *Id. See also* Burger v. Kemp, 483 U.S. 776, 792 (1987). Further, in the context of this case, the hope of swaying the jury with an expression of the mother's feelings for her convicted son is sufficiently speculative that counsel's failure to use her was not ineffective assistance. *Cf.* People v. Wright, 768 P.2d 72, 97 (Cal. 1989) (counsel's failure to object to exclusion of defendant's mother from proceedings was not ineffective assistance).

Counsel's focus on the presentation of testimony regarding appellant's character after he committed the crime and the testimony of the victim's father was an informed, strategic choice. Appellant has not overcome the presumption that it constituted reasonably effective advocacy. *See Strickland,* 466 U.S. at 690. Appellant "has not established that 'in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance'" nor has he shown "'that the justice of his sentence was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance.'" *Burger,* 483 U.S. at 795-96 (quoting *Strickland,* 466 U.S. at 690, 700). Therefore, appellant has not shown that he was denied effective assistance of counsel. *See id.; Strickland,* 466 U.S. at 687; *Griffin,* 760 F.2d at 1514.

The jury found the aggravating circumstances that appellant committed the murder in the course of a burglary and a robbery, and found no mitigating circumstances sufficient to outweigh the aggravating circumstances. The jury in appellant's first penalty hearing heard the testimony of many of the witnesses, including appellant's mother, who were not called to testify at the second penalty hearing; and the jury nevertheless imposed a sentence of death. It is not reasonably probable that the testimony of the omitted witnesses concerning appellant's peaceful character before he committed the crime, or the plea of mercy by appellant's mother, would have altered the verdict at appellant's sec-

ond penalty hearing. Thus, appellant has not shown that, but for the challenged actions of his counsel, there is a reasonable probability that the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *See Strickland,* 466 U.S. at 695. Therefore, appellant's sentence will not be disturbed. *See id.* at 695, 700.

We are also mindful of the fact that appellant specifically requested a repeat performance by counsel who represented him in his trial and first penalty hearing. Appellant sought and obtained the same attorney notwithstanding our prior conclusion that appellant's claim of ineffective assistance of counsel was so meritorious as to warrant our vacating his first sentence of death. Society can ill afford the judicial endorsement of a strategy that would enable a criminal defendant faced with a possible capital sentence to continue a repetition of ineffective assistance by the same counsel of his choice until eventually a jury returns a verdict other than death. It is difficult to avoid the conclusion that appellant deliberately sought a second ineffective presentation by his chosen attorney in order to hedge against the possibility or probability of a second death sentence. Prior to the second penalty hearing, appellant consulted with his attorney concerning the array of witnesses to be called. The record does not reflect contemporaneous disagreement between appellant and his counsel regarding the staging of witnesses. We therefore do not perceive a basis for sympathizing with appellant's belated complaints concerning the quality of his counsel's efforts the second time around.

Appellant further contends that misconduct by the prosecutor at his penalty hearing deprived him of a fair proceeding and violated his constitutional rights. Appellant complains of the prosecutor telling the sentencing jury that its task in sentencing appellant was to make a statement or to ''set a standard'' for the community. Appellant argues that this caused the jury to view its role improperly in that the jurors were led to disregard or misunderstand their responsibility to make an individualized sentencing determination.

We have remanded capital cases for new penalty hearings when prosecutors threatened the jury with social pressure or community opprobrium. *See* Collier v. State, 101 Nev. 473, 479, 705 P.2d 1126, 1129 (1985), *cert. denied,* 486 U.S. 1036, 108 S.Ct. 2025 (1988) (''If we are not angry with him [defendant] . . . we are not a moral community''). The prosecutor's remarks in the instant case are not comparable to the prosecutorial misconduct in the case cited above. The remarks of the prosecutor do not mandate reversal of appellant's sentence.

Appellant next argues that the prosecutor's reference to Thomas Bean, a notorious prison inmate, inflamed the jury and prejudiced his case. *See generally* Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965), *cert. denied,* 384 U.S. 1012 (1966). In the context in which it occurred, however, as a rebuttal to testimony concerning appellant's good character while in prison, the reference to Bean was not so prejudicial as to require reversal.

Appellant also contends that the prosecutor impermissibly interjected his personal opinion by telling the jury that, according to his professional experience, appellant deserved the death penalty. The prosecutor made these remarks, however, while explaining the prosecutor's function in the penalty hearing to the jury and during his summation of the proceedings in his closing argument. Although the prosecutor's choice of words was unfortunate, in this context those remarks are not misconduct calling for reversal.

Appellant asserts that the prosecutor presented to the jury as an aggravating circumstance the fact that appellant murdered his friend while a guest in the friend's house. Appellant is wrong. The State did not present the evidence as an aggravating circumstance under NRS 200.033, but rather as character evidence properly admissible under NRS 175.552. *See* Biondi v. State, 101 Nev. 252, 257, 699 P.2d 1062, 1065 (1985); Rogers v. State, 101 Nev. 457, 466, 705 P.2d 664, 670 (1985), *cert. denied,* 476 U.S. 1130 (1986).

Having reviewed the record, we conclude that the prosecutor's conduct did not impinge on appellant's fundamental rights and did not deny appellant a fair proceeding. Therefore, it is not a basis for relief. *See* Darden v. Wainwright, 477 U.S. 168, 181 (1986). In view of our conclusion, appellant's contention that he was denied effective assistance of counsel in his direct appeal by his counsel's failure to present arguments concerning the prosecutor's conduct discussed above is without merit.

Having concluded that appellant's contentions lack merit, we affirm the district court's decision.

MOWBRAY and ROSE,[3] JJ., concur.

YOUNG, C. J., with whom SPRINGER, J., agrees, dissenting:
We conclude that Mazzan's claims have merit because his

---

[3]THE HONORABLE ROBERT E. ROSE, Justice, participated in the decision of this appeal upon the record, briefs and recording of the oral argument.

attorney, Laurence McNabney, failed to present highly favorable witnesses to testify as to his good character prior to the crime, and because McNabney had no reasonable explanation for this omission. Consequently, counsel's deficiencies raise serious doubt as to the reliability of the penalty hearing results. Therefore, we would vacate Mazzan's death sentence and remand his case to the district court for another penalty hearing.

Preliminarily, we acknowledge that the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability when the jury determines that death is the appropriate punishment in a capital case. Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 1986 (1988). Moreover, "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." Caldwell v. Mississippi, 472 U.S. 320, 329 (1985) (citation omitted). Thus, the fact that we once before reversed Mazzan's death penalty because his counsel was ineffective should have no bearing on our review of this appeal.

We evaluate Mazzan's claim of ineffective assistance of counsel against the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984), and recognized by this court in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984). The test provides that in order to set aside his death sentence, Mazzan must show: (1) that counsel's representation fell below an objective standard of reasonableness, *Strickland,* 466 U.S. at 688; and (2) that but for counsel's mistakes, a reasonable probability exists that the result of the proceeding would have been different. *Id.* at 694.

The prosecution spent more than three days presenting its evidence of aggravating circumstances, that Mazzan committed the murder in the course of a burglary and robbery.[1] However, McNabney called only three witnesses. One witness, the victim's father, testified that he had no overriding desire to have Mazzan executed. The two character witnesses, a prison chaplain and a prison counselor, testified to Mazzan's good character during his time in prison. Although McNabney knew of other significant mitigating evidence available to him, he declined to present this testimony. Specifically, McNabney decided not to have Jean Mazzan, Mazzan's mother, testify on her son's behalf.

McNabney determined that Mrs. Mazzan did not know very much about her son because he left home at the age of seventeen to join the Navy. McNabney reached this conclusion despite the

---

[1]At Mazzan's first penalty hearing, the prosecution never even attempted to prove burglary as an aggravating circumstance.

fact that Mazzan lived with his mother at different times during his adult life and that, even when Mazzan lived elsewhere, they remained in constant contact, either by letters or by telephone or by visits.

McNabney thereby undermined the importance of a mother testifying before a sentencing jury, burdened with determining the value of her son's life.[2] A defendant is entitled to present a plea for mercy. Caldwell v. Mississippi, 472 U.S. 320, 330-331 (1985). If McNabney had called Mrs. Mazzan, she could have presented an effective plea for mercy.

At a hearing on Mazzan's petition for post-conviction relief, McNabney minimized the impact of Mrs. Mazzan's testimony when he stated that "if you remove all the sympathy or moving nature of it or whatever, . . . there was little substance to it." Thus, McNabney committed an error analogous to that discussed by Justice O'Connor in California v. Brown, 479 U.S. 538 (1987). In *Brown,* the Supreme Court upheld an instruction that the jury not be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." In her concurring opinion, Justice O'Connor observed that a danger inherent in attempts to remove emotion from capital sentencing procedures is that such attempts may mislead jurors into believing that mitigating evidence about a defendant's background or character also must be ignored. *Id.* at 545-546.

Furthermore, McNabney had no reasonable basis for excluding Mrs. Mazzan's testimony. *See* Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114 (1987) (holding that counsel's concern that a mother's testimony might reveal a criminal offense not in the record provided a reasonable basis for counsel's decision not to present mitigating evidence); Wilson v. State, 105 Nev. 110, 771 P.2d 583 (1989) (concluding that counsel's failure to call the family to testify did not vitiate defendant's Sixth Amendment right to counsel when the family might deliver damaging testimony).

Finally, McNabney refused to present the other witnesses who

---

[2]The majority opinion states that "the hope of swaying the jury with an expression of the mother's feelings for her convicted son is sufficiently speculative that counsel's failure to use her was not ineffective assistance." To support this position, it cites People v. Wright, 768 P.2d 72 (Cal. 1989). However, *Wright* did not involve counsel's failure to present testimony of the defendant's mother. Rather, counsel failed to object to the trial court's exclusion of all potential witnesses from the proceeding, including defendant's mother. *Id.* at 97. The court held that the benefits of the mother's presence throughout the proceedings were too speculative to conclude that counsel's inaction prejudiced defendant. *Id.*

testified at the post-conviction hearing, his former wife, a business associate and several friends and acquaintances. All of them said that they had come voluntarily and would have testified at Mazzan's penalty hearing, had they been asked. They stated that they felt Mazzan should not receive the death penalty because he is basically a warm and caring individual and would not be a threat to society. Several of them remained in contact with Mazzan after his incarceration. Those individuals shared confidences with Mazzan and depended upon him for advice.

The defendant must overcome the presumption that, under the circumstances, the challenged action of counsel constituted a sound trial strategy. Darden v. Wainwright, 477 U.S. 168, 186-187 (1986). The majority opinion holds that McNabney's failure to call Mazzan's mother and the other character witnesses represented a tactical decision. However, McNabney's reasons for these decisions demonstrate a lack of understanding of the capital sentencing phase and further support Mazzan's claims of ineffective assistance of counsel.

At the post-conviction hearing, McNabney testified that he knew of witnesses who would describe Mazzan as a kind and helpful person and that he agreed with that characterization. However, McNabney incorrectly concluded that the evidence of Mazzan's peaceful and compassionate nature was important only at the guilt phase. Incredibly, McNabney believed such evidence might be more damaging than helpful at the penalty phase because such testimony would make the murder appear more heinous, more gruesome. Under this analysis, any mitigating evidence would highlight the brutality of a homicide and would thus be counterproductive. Therefore, McNabney chose to rely on character evidence as mitigation, but his "logic" prevented the sentencing jury from hearing all available testimony of Mazzan's good character prior to committing the crime.

The consideration of a defendant's character is a "constitutionally indispensable part of the process of inflicting the penalty of death," to be considered together with the circumstances of the crime. Woodson v. North Carolina, 428 U.S. 280, 304 (1976). "Just as the state may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider *as a matter of law* any relevant mitigating evidence." Eddings v. Oklahoma, 455 U.S. 104, 113-114 (1982) (emphasis in original). In the instant case, McNabney precluded the sentencing jury from considering favorable testimony of Mazzan's character before he went to prison.

As well, McNabney's decision to focus on evidence that Mazzan was a model prisoner resulted in testimony highly prejudicial to Mazzan. Before introducing the prison chaplain and prison

counselor, McNabney attempted to exclude evidence that Mazzan was housed on death row. The prosecution argued that Mazzan's position as a death row prisoner affected his conduct while in prison. Although the district court recognized the prejudicial nature of such evidence, the court allowed the prosecution to present this information as a motive for Mazzan's good behavior in prison. Despite this advance knowledge, McNabney presented these character witnesses rather than Mrs. Mazzan and the others who testified at the post-conviction hearing. Subsequently, the prosecution revealed through cross-examination that Mazzan was a death row inmate.

McNabney's misunderstanding of the concept and importance of mitigation resulted in the exclusion of highly favorable character evidence. Additionally, his introduction of character evidence from Mazzan's time in prison prejudiced the sentencing jury by informing them that Mazzan had been previously sentenced to death. Therefore, Mazzan demonstrated that his counsel's representation fell below an objective standard of reasonableness, satisfying the first prong of *Strickland.*

Likewise, but for McNabney's omission of this character evidence, the second jury could very well have decided against the death penalty.[3] In his closing argument, the prosecutor acknowledged that the two aggravating circumstances, robbery and burglary, may not be sufficient cause to impose the death penalty. However, in the prosecutor's opinion, the fact that Mazzan killed a friend in the victim's home made this a "death case."[4] Conse-

---

[3]The majority notes that at the guilt phase of appellant's trial, appellant's counsel had presented testimony of the mother and other witnesses whose absence from the second penalty trial constitute the basis for appellant's claim of ineffective assistance. However, the fact that the first jury heard this character evidence at the guilt phase and still found appellant guilty and sentenced him to death does not mean the evidence had no effect. That the first jury imposed a death sentence is more likely explained by counsel's ineffective assistance at the first penalty phase. *See* Mazzan v. State, 100 Nev. 74, 675 P.2d 409 (1984). The purpose of character evidence at the guilt phase in a capital case is entirely different from its purpose at the penalty phase. Moreover, because the second penalty jury never heard the character evidence, even at a guilt phase, it had no opportunity to consider this mitigating evidence. Had the jury heard the character evidence, it may well have decided against death.

[4]The majority opinion justifies the prosecution's remarks as character evidence properly presented to the sentencing jury pursuant to NRS 175.552. However, we have never allowed the prosecution to characterize evidence as aggravating which conflicts with one of those circumstances listed as aggravating under NRS 200.033. The legislature determined that killing a person at random and without apparent motive is an aggravating circumstance. NRS 200.033(9). Because the prosecution's argument that Mazzan's killing a friend aggravated the seriousness of the murder controverts this statutory aggravating circumstance, we conclude that such an argument was impermissible.

quently, even the prosecutor admitted that the two aggravating circumstances in Mazzan's case may not warrant the death penalty.

A jury in a capital sentencing proceeding makes a "highly subjective, unique, individualized judgment regarding the punishment that a particular person deserves." Dawson v. State, 103 Nev. 76, 80, 734 P.2d 221, 223 (1987) (citations omitted). Under Nevada law, the jury weighs the mitigating factors against the aggravating circumstances which it finds to determine whether the defendant shall live or die.

In the instant case, the omitted testimony would have placed the murder in its proper perspective—a tragic but isolated event in a productive life that continues to impact positively on many people. Thus, a reasonable probability exists that, had it heard the additional mitigating evidence, the jury would not have imposed the death sentence. Therefore, we conclude that McNabney's failure to present more mitigating evidence on Mazzan's behalf was error serious enough to abrogate Mazzan's Sixth Amendment right to counsel. Accordingly, we would vacate Mazzan's death sentence and remand to the district court for a new penalty hearing.