VICTOR MAXIMILLIAN JIMENEZ, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 20723

November 28, 1990                                      801 P.2d 1366

*Moran & Weinstock,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

---

## OPINION

*Per Curiam:*

We first reviewed this matter on direct appeal from a judgment upon a jury verdict convicting appellant Victor Maximillian Jimenez of burglary, robbery with use of a deadly weapon, and two counts of first degree murder. Jimenez was sentenced to death, and this court affirmed all of his convictions but vacated the death sentence and remanded to the district court for a second penalty hearing before a newly empaneled jury. *See* Jimenez v. State, 105 Nev. 337, 775 P.2d 694 (1989). After the new penalty hearing, Jimenez was again sentenced to death. In appealing from his second death sentence, Jimenez contends that the sentence may not stand because of prejudicial error resulting primarily from prosecutorial misconduct and an erroneous construction of an aggravating circumstance. We are convinced that Jimenez was fairly sentenced, and therefore affirm.

## Facts

The facts surrounding the crimes committed by Jimenez are set forth in *Jimenez v. State* and need not be recounted here. Suffice it to say that although we perceived no prejudicial error in the guilt phase of the first trial, and therefore affirmed each of the convictions, it was clear that the jury found certain aggravating circumstances in the initial penalty hearing that could not be sustained on the facts. We therefore found it necessary to vacate the first death sentence and to remand the case for a new penalty hearing. In the earlier opinion, we concluded that the only "arguably sustainable aggravating circumstances presented to the jury were that Jimenez acted with 'depravity of mind' (NRS 200.033(8)) and that he committed the murders during a robbery (NRS 200.033(4))." *Id.* at 343, 775 P.2d at 698. The second penalty phase hearing lasted three days, and after the jury again found Jimenez deserving of death on both counts, Jimenez appealed.

## Discussion

A jury verdict will not be disturbed on appeal if supported by substantial evidence. Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20 (1981). Our review of the record reveals both substantial evidence to support the jury's verdict and fundamental fairness in the proceedings.

### A. *Prosecutorial Misconduct*

Jimenez alleges that the prosecutor injected his personal opinion into the penalty hearing, and improperly referred to evidence not before the jury. He contends that as a result of this misconduct, the jury was influenced by prejudice, passion and other arbitrary factors. We disagree.

On a number of occasions, this court has declared the impropriety of prosecutors buttressing argument by force of their personal opinions. As we stated in Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985):

> Such an injection of personal beliefs into the argument detracts from the "unprejudiced, impartial, and nonpartisan" role that a prosecuting attorney assumes in the courtroom. . . . [B]y invoking the authority of his or her own supposedly greater experience and knowledge, a prosecutor invites undue jury reliance on the conclusions personally endorsed by the prosecuting attorney. . . . Prosecutors therefore must not express their personal beliefs, as was done here.

*Id.* at 480, 705 P.2d at 1130 (citations omitted). We nevertheless recognize that prosecutors must be free to express their perceptions of the record evidence and inferences properly drawn therefrom. We have simply directed them to do so without using such expressions as "I personally believe," or "In my opinion," so as to in effect place their own certification on their arguments. Thus, a prosecutor may properly argue in a manner such as, "Based upon the testimony just recounted to you, I suggest that Mr. Witness is unworthy of belief," or "For the reasons just mentioned, I submit that the penalty of death is suitable punishment for Mr. Defendant." The foregoing examples of proper and improper argument merely attest to the obvious—that much of the problem rests with semantics since the prosecutor is in truth expressing his personal opinion or conclusion in each of the four examples. We nevertheless expect our prosecutors to be sensitive to the need to avoid expressions that clearly reflect or state a condition of personal belief or opinion.

In the instant case, Jimenez complains that the prosecutor injected his own opinion concerning gradations of first degree murder and the differing degrees of punishment that each may justify. The prosecutor's argument was not improper. We have previously recognized the right of a prosecutor in a penalty phase hearing to discuss "general theories of penology, such as the merits of punishment, deterrence and the death penalty." Ybarra v. State, 103 Nev. 8, 15, 731 P.2d 353, 358 (1987). Here, the prosecutor presented hypotheticals apparently or approximately based upon actual cases to the jury as examples of criminal conduct not warranting the death penalty. The prosecutor was thus contrasting the circumstances of the hypothetical cases with those of the instant case in order to illustrate the qualitative differences between the crimes and to suggest a basis for imposing the harsher penalty against Jimenez. The prosecutor's argument represented proper persuasion rather than improper inflammation. The argument was not designed to inflame the jury by comparing Jimenez to other specifically named criminals, as was the case in *Collier*. The prosecutor's general discussion of the death penalty did not constitute misconduct.

Jimenez also contends that the prosecutor improperly referred to evidence outside the record. Usually, counsel's references in argument to evidence not properly before the jury is improper. *Ybarra*, 103 Nev. at 15, 731 P.2d at 358. Here, however, defense counsel noted that two $100 bills were found in the pocket of one of the victims. The clear purpose of the statement was to cast doubt on whether the murders occurred during the commission of

a robbery. That issue, however, had been decided in the guilt phase by the original jury and affirmed on appeal by this court. *Jimenez,* 105 Nev. at 342, 775 P.2d at 697. Therefore, defense counsel was not entitled to argue that Jimenez did not murder the victims in connection with the robbery. Rather, defense counsel should have concentrated on mitigating factors that would arguably outweigh aggravating factors and justify the imposition of a penalty less than death. In any event, because defense counsel elected to argue matters pertaining to innocence or guilt before a new jury in a penalty hearing, the prosecutor understandably and properly informed the jury that it had not heard all the evidence concerning the hundred dollar bills. Defense counsel's objection was sustained, and the prosecutor again sought to argue that the issue had been decided in prior proceedings. After a second successful objection by defense counsel, the prosecutor changed his line of argument.

Both prosecutors and defense counsel "share a duty to confine arguments to the jury within proper bounds." United States v. Young, 470 U.S. 1, 8 (1985). In the instant case, defense counsel's attempt to cast doubt on his client's guilt by selectively referring to evidence presented to a different jury in the guilt phase of trial invited the State's effort to eliminate confusion introduced by the defense. The prosecutor's conduct was justified.

Based upon our review of the record, we are not persuaded that the conduct complained of by Jimenez was either improper or unfair. To the contrary, it appears that the prosecutor argued persuasively but not inappropriately.

## B. *Aggravating and Mitigating Factors*

As noted above, our original opinion stated that "[t]he only arguably sustainable aggravating circumstances presented to the jury were that Jimenez acted with 'depravity of mind' and that he committed the murders during a robbery." *Jimenez,* 105 Nev. at 343, 775 P.2d at 698 (citations omitted). It was established at trial in the original guilt phase that Jimenez murdered the victims while robbing Gabe's Bar. We held that the evidence substantially and fairly supported the jury's finding in that regard. *Id.* at 342, 775 P.2d at 697. Committing murder during the commission of a robbery is an aggravating circumstance under NRS 200.033(4).

The State offered two additional aggravating circumstances to the jury: torture and mutilation. We have held that the aggravating circumstance specified at NRS 200.033(8) requires "torture,

mutilation or other serious and depraved physical abuse beyond the act of killing itself, as a qualifying requirement to an aggravating circumstance based in part upon depravity of mind." Robins v. State, 106 Nev. 611, 629, 798 P.2d 558, 570 (1990). Despite the disjunctive language used in NRS 200.033(8), the referenced provision embraces only one aggravating circumstance. As we held in *Robins,* if an aggravating circumstance is based upon depravity of mind, it must include torture, mutilation or some other serious and depraved physical abuse beyond the act of killing itself. Here, the jury did not base its findings upon depravity of mind. Rather, it found both torture and mutilation as distinct and separate aggravating circumstances. Depravity of mind, torture and mutilation are the closely related components of a single aggravating circumstance. Although depravity of mind requires one or more of the components discussed above, the natural meaning attached to the discrete acts of mutilation or torture are sufficiently clear to support a constitutionally valid aggravating circumstance without the need for a limiting clarification. Nevertheless, NRS 200.033(8) provides the basis for only one aggravating circumstance. If the Legislature had intended to include more than one aggravating circumstance within the referenced provision it would have done so under separate numbers and categories as it had with the other aggravating circumstances defined under NRS 200.033. We thus conclude that whenever an aggravating circumstance is based upon NRS 200.033(8), it may consist of depravity of mind, as discussed above, or either mutilation or torture, singularly or in combination.

In this case, the jury's separation of torture and mutilation into two separate aggravating circumstances does not constitute a basis for reversal. In the first place, because the jury had a sufficient evidentiary foundation for finding that the victims were tortured and mutilated in the course of the murders, we need only view the jury's findings as justification for one aggravating circumstance. Second, Jimenez murdered two victims while robbing Gabe's Bar, clearly an aggravating circumstance under NRS 200.033(4). Because the jury discerned "no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found," the death sentence will be affirmed.

We have considered Jimenez' other assignments of error and conclude that they are without merit.

Based upon our review of the record, we are persuaded that the sentence of death was not the result of passion, prejudice or any arbitrary factor, and that the sentence was not excessive, considering both the crime and the individual characteristics and background of the defendant. Having determined that this, the second

penalty hearing accorded Jimenez, was free of prejudicial error, we affirm the judgment upon the jury verdict sentencing Jimenez to death.